508 A.2d 550

**Walter Edward MILLER, Jr., Appellant,**

v.

**Mary C. MILLER, Appellee.**

**Walter Edward MILLER, Jr., Appellee,**

v.

**Mary C. MILLER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1985.

Filed March 17, 1986.

Reargument Denied May 21, 1986.

434

Michael K. Hanna, Lock Haven, for appellant (at 130) and appellee (at 826).

Frederick D. Lingle, Lock Haven, for appellant (at 826) and appellee (at 130).

Before WIEAND, OLSZEWSKI and WATKINS, JJ.

WIEAND, Judge:

The only novel issue to be decided in these cross-appeals from an order distributing marital property and awarding alimony, alimony pendente lite, counsel fees and costs is the

meaning to be ascribed to the term "cohabitation" as used in section 507 of the Divorce Code of 1980.[1]

Walter Edward Miller, Jr. (Husband) and Mary C. Miller (Wife) were married on September 30, 1950. They separated on August 10, 1980, and on August 29, 1983, Husband filed a complaint seeking a section 201(d)(1) divorce. Wife filed an answer and counterclaim requesting alimony, alimony pendente lite, counsel fees and costs. A bifurcated divorce decree was entered on September 23, 1983. On January 29, 1985, after both parties had filed exceptions to the report and recommendations of a master, the court entered an order directing Husband to pay alimony pendente lite at the rate of $64.00 per week from September 13, 1983 until January 29, 1985 and alimony at the same rate commencing February 1, 1985. The order distributed to Husband two pension funds, a freezer and several guns and to Wife the marital residence, a gravesite and all remaining personal property. The decree of equitable distribution also directed Husband to pay to Wife in cash the sum of $12,-312.50. Finally, Husband was ordered to pay to Wife the sum of $3,386.81, being seventy-five percent of Wife's counsel fees. Both parties appealed.

Husband contends that following separation and continuing after divorce Wife cohabited with one Harold Geysler. This cohabitation, Husband argues, is a bar to an order to pay alimony and/or alimony pendente lite.

 Section 507 of the Divorce Code [2] provides as follows:

No petitioner shall be entitled to receive any award of alimony where such petitioner has entered into cohabitation with a person of the opposite sex who is not a member of the petitioner's immediate family within the degrees of consanguinity subsequent to the divorce pursuant to which alimony is being sought.

1. Act of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 507.
2. 23 P.S. § 507.

This provision, it will be observed, refers to a spouse's entitlement to alimony; it does not establish a bar to the receipt of alimony pendente lite. An award of alimony pendente lite is designed to enable the dependent spouse to maintain or defend the action in divorce. *Prozzoly v. Prozzoly*, 327 Pa.Super. 326, 331, 475 A.2d 820, 823 (1984). Although the Divorce Code does not specify the grounds upon which an award of alimony pendente lite is to be made, this Court has held that a trial court making an award of alimony pendente lite should consider the respondent's ability to pay, the petitioner's separate estate and income, and the general character, situation, and surroundings of the parties. *Orr v. Orr*, 315 Pa.Super. 168, 172, 461 A.2d 850, 852 (1983); *Wechsler v. Wechsler*, 242 Pa.Super. 356, 362, 363 A.2d 1307, 1310 (1976).

The Divorce Code does not define "cohabitation." The term, however, has been defined by this Court in a related context. In *Thomas v. Thomas*, 335 Pa.Super. 41, 483 A.2d 945 (1984), the Court was called upon to determine whether isolated acts of sexual intercourse between spouses who were otherwise living apart constituted cohabitation for § 201(d)(1) purposes. Thomas had sought a § 201(d)(1) divorce and thus was required to prove that the couple had lived "separate and apart" for a period of at least three years. "Separate and apart" was defined by section 104 of the Divorce Code as the "[c]omplete cessation of any and all cohabitation." [3] In concluding that instances of sexual relations during a separation period did not alone constitute cohabitation, the Court stated that " 'cohabitation' means the mutual assumption of those rights and duties attendant to the relationship of husband and wife. The ties that bind two individuals in a marital relationship involve more than sexual intercourse." *Id.*, 335 Pa.Superior Ct. at 47, 483 A.2d at 948. See also: *Flynn v. Flynn*, 341 Pa.Super. 76, 491 A.2d 156 (1985). "Cohabitation, although not defined statutorily, is defined by Webster's New Collegiate Dictionary as 'living together as husband and wife.' Similarly,

---

3. 23 P.S. § 104.

Ballentine's Law Dictionary defines cohabitation as '[a] dwelling together of man and woman in the same place in the manner of husband and wife.' The definitions are appropriate for our purposes and are followed pursuant to the mandate of Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903, that '[w]ords and phrases shall be construed ... according to their common and approved usage....' " *McBride v. McBride,* 335 Pa.Super. 296, 299, 484 A.2d 141, 142 (1984). Other courts called upon to define cohabitation have reached similar results. See: *Hicks v. Hicks,* 405 So.2d 31, 33 (Ala.App.1981) ("[C]ohabitation requires some permanency of relationship coupled with more than occasional sexual activity[.]"); *Gertrude L.Q. v. Stephen P.Q.,* 466 A.2d 1213, 1217 (Del.1983) ("The word 'cohabit' ... [means] an arrangement existing when two persons live together in a sexual relationship when not legally married.").

■ In defining cohabitation, the Court in *Thomas v. Thomas, supra,* relied in part upon the legislative history of the Divorce Code. The Court's observations are also pertinent to our discussion.

House debates regarding the question whether cohabitation with a person of the opposite sex should serve as a bar to alimony (23 P.S. § 507) reveal that the legislators perceived "cohabitation" as involving more than just sexual relations. This point is illustrated by the following comments of Representative Cunningham, Centre County:

Cohabitation is clearly not remaining at someone's house overnight. It is clearly not remaining at someone's house for the weekend. Cohabitation is a definition that has to be viewed in light of the facts of each individual case ... We are talking about a consistent pattern of conduct established over a substantial period of time with one person.

HJ 1843L, reprinted in J.A. Rounick, *Pa. Matrimonial Practice,* Part 3, Appendix B at 42–43 (1983).

*Thomas v. Thomas, supra* 335 Pa.Super. at 46, 483 A.2d at 947. A further reading of the House debates discloses a legislative concern that subsequent marriages and subsequent relationships akin to marriage should be treated alike for purposes of terminating alimony. Representative McVerry, Allegheny County, in voicing his support for section 507, echoed the same concern when he argued that without section 507's language the legislature would be sanctioning "unmarried persons living together yet being supported and/or financed by the remnants of a former marriage[.]" HJ 1843L, reprinted in J.A. Rounick, *Pa. Matrimonial Practice,* Part 3, Appendix B at 49 (1983). When circumstances are such that a dependent former spouse enters into a remarriage or an extramarital relationship which is similar to a marriage, receipt of alimony by one of the parties from a former spouse is thereafter barred.

We hold, therefore, that cohabitation, for purposes of applying the bar of section 507, requires that two persons of the opposite sex reside together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage relationship. Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means. See generally: *Hicks v. Hicks, supra.* Where, upon proof by a preponderance of the evidence, the trier of fact concludes that the dependent former spouse has entered into a relationship with "a member of the opposite sex who is not a member of the petitioner's immediate family within the degrees of consanguinity" and the two have assumed the rights, duties, and obligations attendant to the marital relationship, the dependent former spouse is no longer entitled to receive alimony from the other former spouse. An occasional sexual liaison, however, does not constitute cohabitation.

Turning to the present case, the nature of the relationship between Wife and her paramour was described by the trial court as follows:

Mrs. Miller has admitted to having sexual relations with Mr. Geysler and has admitted that he is not related to her in any way....

According to Mrs. Miller, Mr. Geysler only keeps one change of clothes at her house and she does not keep any clothing at his place in New York.

Mr. Geysler has given Mrs. Miller a car, food, a wood burner, and has helped maintain the marital home. However, both Mrs. Miller and Mr. Geysler have testified that she is to pay him for the automobile when she sells a Mustang that she owns.

The only real question is how often Mr. Geysler is at Mrs. Miller's home. Mr. Geysler has testified that he is at Mrs. Miller's approximately one weekend per month. These 'weekends' last from Thursday until Monday.

Mrs. Miller's testimony was confusing on the time Mr. Geysler spent at her home. Mrs. Miller first testified that from September 22, 1983 until February 14, 1984 Mr. Geysler had only spent twenty-one days at her home. This was confirmed by Mr. Geysler. She had spent two (2) weeks at his home in the summer of 1983.

Mrs. Miller then testified that prior to September 23, 1983 that Mr. Geysler had spent two (2) or three (3) weekends a month at her home. She affirmed this on cross-examination. Mr. Geysler had also spent one week at Mrs. Miller's during hunting season in 1982 and had spent from February 16, 1984 until March 1, 1984 due to a flood that had damaged Mrs. Miller's house, bad roads in New York, the fact that Mr. Geysler had contracted the flu and he was subpoenaed for the Master's Hearing of March 1, 1984. Mr. Geysler also testified that he didn't intend to return to the Lock Haven area until April, 1984.

Trial court opinion at 36–37 (references to notes of testimony omitted).

■ Although Mrs. Miller and Mr. Geysler obviously shared more than a casual friendship, the trial court could properly conclude from the evidence that the two were not

cohabiting within the meaning of section 507 of the Divorce Code. The evidence reflected only weekend sexual liaisons. The couple did not share a common home on a permanent basis but maintained separate residences. They did not mutually share their respective incomes and expenses. The evidence that weekends were spent together did not establish cohabitation; and, therefore, the trial court could properly conclude that Wife was not barred from receiving alimony. Accord: *Hanson v. Hanson,* 177 Pa.Super. 384, 110 A.2d 750 (1955).

 Husband also challenges the amount of alimony and alimony pendente lite which the trial court awarded, contending that neither award accurately reflected the parties' economic circumstances. A determination of the amount to be awarded, whether of alimony or alimony pendente lite, rests in the first instance in the exercise of a sound discretion by the trial court. Absent an abuse of discretion, a trial court's award of alimony or alimony pendente lite will not be disturbed. *Mazzei v. Mazzei,* 331 Pa.Super. 432, 437, 480 A.2d 1111, 1113 (1984); *Pangallo v. Pangallo,* 329 Pa.Super. 25, 31, 477 A.2d 885, 888 (1984). The trial court in this case examined Husband's weekly income of $319.78 and Wife's weekly income of $82.00. Neither party had separate assets having substantial value. Wife remained in the marital home, maintained it and kept it in repair. The Master concluded and the trial court agreed that an award of twenty percent of Husband's weekly income was within his ability to pay and would adequately assist Wife in supporting herself while defending the divorce action. We find no abuse of discretion in the $64.00 per week award of alimony pendente lite.

 As to the alimony award, Husband argues (1) that the amount was too high and (2) that the award should not have been made to continue indefinitely. The trial court, in setting the award at $64.00 per week, allegedly failed to consider the distribution of marital assets. However, our review of the record does not reveal that the trial court, in fashioning an order of $64.00 per week, failed to take into

account the economic factors suggested by the Divorce Code. We find, therefore, that there was no abuse of discretion and affirm an award of alimony in the amount of $64.00 per week.

The alimony award requires the weekly payments to "continue until further order of the Court." At the time of the order of equitable distribution, Wife was 53 years old, was working part-time in a school cafeteria and was earning $82.00 per week. The court also observed that Wife was suffering from arthritis and was physically unable to work full time. Section 501(c) of the Divorce Code [4] provides that "[u]nless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, ... or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order...." The trial court in the instant case considered Wife's age, physical condition, and current employment and concluded that an award for an indefinite period but subject to the court's future review would best meet Wife's needs and Husband's limited economic horizons. Husband was 54, in good health, and able to continue full time employment with Piper Aircraft Corp. Husband was also the beneficiary of two pension funds having a total value in excess of $33,-000.00. The trial court did not commit an abuse of discretion when it awarded Wife $64.00 per week, subject to further review and later modification according to Wife's needs and Husband's ability to pay. Wife's contention that the award of alimony to her was inadequate must similarly be rejected. See: *Remick v. Remick*, 310 Pa.Super. 23, 33, 456 A.2d 163, 168 (1983).

■■■■ An award of counsel fees is appropriate when necessary to allow a dependent spouse to maintain or defend an action for divorce. *Young v. Young*, 274 Pa.Super. 298, 302, 418 A.2d 415, 417 (1980). The trial court found that Wife was a dependent spouse and awarded her counsel

**4.** 23 P.S. § 501(c).

fees. Although the husband-appellant contends that the amount was excessive, our review of the record discloses no abuse of the trial court's discretion. In the absence of such an abuse, we will not interfere with the amount determined by the trial court. See: *Ruth v. Ruth*, 316 Pa.Super. 282, 285, 462 A.2d 1351, 1352–1353 (1983).

In distributing marital property, the trial court awarded Husband his United States Army and Piper Aircraft pensions, which had a combined value of $33,033.94, and also a fifty dollar freezer and five guns having an estimated value of $750.00. All other marital property was awarded to Wife. This other property included the marital residence, Wife's retirement fund, the burial lot, and all personal property. In this manner the court divided and distributed all marital property then in existence and achieved a relatively equal division.[5]

For reasons which have not been explained, the trial court also directed Husband to pay to Wife the sum of $12,312.50. We are constrained to hold that this was an abuse of discretion. This money was not "marital property." As cash or investment, it simply did not exist. Neither party had such an amount in hand or in the bank at the time of separation or at the time of hearing. If Husband is to pay this sum, it will be necessary that he borrow the same, for the moneys in his pension accounts are not now available to him. The court's order distributing marital property, however, has awarded all other assets to Wife and thus has made it exceptionally difficult, if not impossible, for Husband to borrow the money needed to comply with this portion of the court's order. The Divorce Code instructs divorce courts to distribute "marital property" equitably between the spouses. It does not authorize divorce courts to impose orders with which a party cannot comply. A court should not visit retribution or punishment upon either spouse. We conclude in this case that it was an

---

5. The marital home was estimated by Husband to have a value of $25,400.00; Wife said it was worth $8,180.00; and the court placed on it a value of $16,500.00.

abuse of discretion to require a spouse, under the guise of effecting equitable distribution of marital property, to pay moneys to the other which the former did not have and which he or she could not reasonably be expected to acquire or borrow.[6]

The trial court's order of January 29, 1985 is modified by striking therefrom the requirement that Husband pay to Wife the sum of $12,312.50. As so modified, the order is affirmed.

---

**6.** The trial court found that a 1979 Jeep truck had been disposed of in good faith and for value prior to commencement of the divorce action. See: Divorce Code of 1980, § 401(e)(5), 23 P.S. § 401(e)(5). The evidence supports this finding.