**Barvitskie v. Barvitskie**

*Michael F. Mychak,* for plaintiff.
*Robert W. Buehner Jr.,* for defendant.

ROSINI,*P.J.,* October 6, 1987 — The parties to this action were granted a decree in divorce on April 10, 1987. By order of this court dated the same date, defendant Richard Barvitskie was ordered to pay plaintiff Ruth Barvitskie alimony in the sum of $30 per week for three years.

There are currently two petitions filed before this court. Plaintiff Ruth Barvitskie filed a petition for contempt for failure to comply with alimony order, alleging that she has demanded payment of the aforementioned alimony, but that defendant has refused to pay it, and has not paid it since the date of the parties' divorce decree. A rule to show cause why he should not be held in contempt was issued upon defendant Richard Barvitskie.

In his answer to plaintiff's petition for contempt, defendant admitted that he has refused to pay alimony to plaintiff, based upon his belief that there has been a substantial change in circumstances on the part of both parties. Pursuant to that belief defendant filed a petition to terminate or modify alimony pursuant to 23 Pa.C.S. §501(e). In his petition, defendant alleges that substantial and continuing changes in circumstances have ocurred. He

alleges that plaintiff's income has substantially increased since the time the alimony was set, while his has not; that alimony was awarded to plaintiff mainly because she was attending college, and now she is not; and that plaintiff may be receiving assistance with living expenses from a companion of hers who appears to spend a substantial amount of time at plaintiff's residence. A hearing was held on August 3, 1987, specifially to address defendant's allegation of cohabitation on the part of plaintiff and her companion.

There is very little case law in Pennsylvania defining the term "cohabitation" as it is used in the Divorce Code, 23 Pa.C.S. §101 et seq. In *Tolbert v. Teets,* 27 D.&C. 3d 106 (1983), defendant Kenneth Teets filed a petition for rehearing in response to a court order dismissing his petiton to terminate alimony. Defendant alleged that plaintiff Ellen Tolbert had breached a separation agreement by remarrying or cohabitating with another male, in violation of the Divorce Code.

The court found that plaintiff had not cohabitated with another male. After quoting the definitions of "cohabitation" found in Black's Law Dictonary, Ballantine's Law Dictionary, and Webster's New Collegiate Dictionary, 27 D.&C. 3d at 112, the court observed that "[t]he common thread that runs through these various definitions is that cohabitation entails a dwelling or living together with a holding out as husband and wife. Common usage ditates that the term implies more than dating or sexual intercourse." *Id.* The court went on to say tht "[s]ection 501(e) allows for a modification of an alimony order based on changed circumstances of a substantial and continuing nature. The implication

that follows is that cohabitation would have to be of a substantial and continuing nature to bar alimony." *Id.* at 114.

Finally, the court concluded that:

"Cohabitation, as that term is used in the Divorce Code, implies to this court some permanancy of relationship coupled with more than just occasional sexual activity. It implies a commitment between two people. Mere unchastity or occasional post-marital indiscretion are not, by themselves, causes for reducing or terminating an alimony award. Any other conclusion would go against the legislative intent of the statute which attempts to base alimony on the actual need while effectuating economic justice between parties." *Id.*

In *McCarty v. McCarty*, 29 D.&C. 3d 687 (1984), a petition to terminate alimony was filed on the ground that respondent, his former wife, was co-habitating with another male. The issue before the court was whether respondent's conduct consti-tuted cohabitation within the Divorce Code, so that petitioner was relieved of his responsibility to pay alimony.

The court listed factors which may be taken into account in deciding whether a given situation rises to the level of cohabitation:

"The court may consider the financial arrange-ments of the parties. Did the parties share ex-penses? Did one party support the other, in whole or in part? Did they use each other's charge accounts or establish joint bank accounts? The court may inquire into their personal relationships. Did they engage in sexual relations? Were their household duties shared? Did they develop a circle of mutual friends? How did they explain their relationship to neighbors, family, friends or acquaintances and how did those people view the relationship? Where

and in what manner did the parties spend their vacations? Further, the court may inquire as to the use of either party of the property of the other. What address did each party use? Did each party have access keys, etc.) to the residence alleged to be the place of cohabitation? Did each maintain clothing, toilet articles or other items at a common residence? Did they share automobiles or other personal property? Finally, what was the attitude of each toward the children of the other and the children's attitude toward each of the parties?" *Id.* at 692.

The court then found that respondent had entered into cohabitation with another male based on the fact that the answers to most of the above questions were in the affirmative.

Lastly, in *Miller v. Miller,* 352 Pa. Super. 432, 508 A.2d 550 (1985), the court held that cohabitation "[r]equires that two persons of the opposite sex reside together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage relationship. Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means." *Miller* at 439, 508 A.2d at 554.

Applying the above law to the facts at hand, it is clear that plaintiff Ruth Barvitskie was not cohabitating with another male. Testimony at the hearing established that plaintiff's male companion was seen at plaintiff's residence anywhere from one to four times per week; that he sometimes cut the grass; that he sometimes spent the night at plaintiff's residence; that he sometimes ate dinner at plaintiff's house; that he had no key to the premises; that he kept very few clothes there; and that he has his own house five to six miles away from plaintiff.

There was no testimony establishing any kind of

continuous cohabitation. There was no testimony as to financial commingling or financial interdependence. The couple did not share the same residence. In short, there was no indication at all that the couple held themselves out in the manner of husband and wife and assumed marital-type rights and duties.

For the foregoing reasons, the court enters the following

### ORDER

And now, October 6, 1987, after hearing and upon due consideration, it is hereby ordered and directed that:

Plaintiff's petion for contempt for failure to comply with alimony order is granted. Defendant is sentenced to 15 days in the Northumberland County Prison, said sentence to begin within 35 days of the date of this order. Defendant may purge himself of contempt if he pays one half of the arrearages ($375 as of the week of September 28, 1987) within 30 days of the date of this order. Failure to pay one half of the arrearages within the time specified will result in defendant's incarceration as set forth above.

Defendant's petition to terminate or modify alimony is denied. The order of April 10, 1987 stands as written, and defendant is to pay, in addition, 10 dollars per week until the remaining arrarages ($375 as of the week of September 29, 1987) are dissolved.