## Lynn v. Lynn

*Douglas W. Ferguson,* for plaintiff.
*R. Charles Thomas,* for defendant.

THOMAS, *P.J.,* July 16, 1990 — This contested divorce action was filed in June 1987. A master was ultimately appointed and he filed a lengthy report recommending permanent alimony for a limited period of time. Exceptions were filed but later with-

drawn, and a final decree was entered March 22, 1989. The final decree awarded permanent alimony to plaintiff wife in the amount of $560 per month until April 1, 1991.

The former husband now petitions the court to terminate said alimony award because of a change of circumstances.

## DISCUSSION

At the time of the divorce the wife had only a basic 12-year education and lacked extensive employment experience, but her husband had successful employment in the insurance business. At the time the master heard the matter the wife was undertaking a college education and her graduation was predicted to be in the month of December 1990. Accordingly, the master recommended an award of permanent alimony to help underwrite the expense of said education, and recommended that since college graduates are not usually immediately employed the day after graduation that the alimony award be extended approximately three months beyond her graduation date. The final divorce decree so provided.

As it turned out the wife proved to be an exceptional college student, and through undertaking a heavier than required schedule she was able to advance her graduation date to May 1990. She had determined that a career in speech therapy was an appropriate goal, and her 3.9-plus average upon graduation indicated her proficiency in her chosen specialty. At the time she undertook her speech therapy specialty it was projected that she would become employable in this field upon graduation with a regular bachelor of arts degree. However, changes in this profession have developed in recent years, and the court heard considerable testimony

regarding the employability in this field without procuring a master's degree. In summary, while employment with a school system still requires only a B.A. college degree in this field, the testimony clearly shows that in order to procure full-time employment in this profession with a school, hospital or as a private professional, a master's degree is a requirement. While Mrs. Lynn would be employable within the school system as a possible fill-in substitute teacher, her hopes of permanent employment with a school, hospital or as a practicing professional is a virtual impossibility without having obtained a master's degree and certification. Thus, we find as a fact that her educational requirements are different now than those anticipated by the parties, counsel, divorce master and the court at the time the alimony award was made.

## ISSUE

Should the court, pursuant to the alimony section of the Divorce Code, 23 P.S. 501(e), change the alimony award because of the "changed circumstances of either party of a substantial and continuing nature"?

The husband argues that he had a right to rely upon the obvious intent of the parties that alimony terminate three months after the wife obtained a standard college degree, and the wife's wish to make herself "more employable" by obtaining a master's degree is not such a sufficient "changed circumstance" to warrant continuation of alimony. The wife's posture is that this recent change in educational requirements to become employable in her professional specialty was not anticipated at the time the order was entered. Further, even with her outstanding undergraduate scholastic record, her

future employment in this specialty on a permanent basis is unlikely unless she obtains a master's degree.

We note in this regard that due to her high scholastic achievement and excellent regard by the faculty at her university, she has been accorded a graduate· assistant position for which she is paid $1,250˙ per semester and apparently received an additional $150 to $200 per semester to cover book and miscellaneous expenses. It is projected that obtaining her master's degree will take an additional 15 to 18 months, and the director of her department at the university projects a late summer or early fall 1991 completion of her studies and the granting of a master's degree.

We have been cited no case law controlling of this rather unusual "alimony for education" situation, but believe a fair interpretation of legislative intent expressed in section 501(e) requires that we not terminate the original alimony award in this case. The purpose of the alimony award in this case was to provide the former spouse with an education giving her the opportunity for meaningful employment in the future. Because the marketplace now requires additional education to procure meaningful employment is not the fault of either party in this divorce action. In refusing to terminate the husband's obligation to pay alimony, we note that with the last payment under the present order the wife would receive no further alimony after April 1, 1991, and thus, would still have a five- to seven-month period of time before she secured her master's degree to meet her own living expenses without the benefit of the monthly alimony payments.

A collateral issue was also raised and heard on the issue of whether alimony should be terminated

under section 507 of the code because of the cohabitation with a person of the opposite sex.

We held two hearings on the issues in this case and at the conclusion of the hearing held May 11, 1990, we declined to terminate alimony under the provisions outlined in section 507, and noted that the facts heard by the court on her association with a person of the opposite sex did not meet the requirements of section 507 and cited to counsel the case of *Miller v. Miller,* 352 Pa. Super. 432; 508 A.2d 550 (1986), as the basis for our ruling.

We will deny defendant's petition to terminate alimony.

### *Request for Counsel Fees*

After conclusion of the two hearings in this case counsel for plaintiff submitted to the court a request for additional attorney's fees in the amount of $525. Applying common sense and equitable principles we will allow plaintiff one-half of these counsel fees.