## Cherrington v. Cherrington

*Lenora M. Smith,* for plaintiff.
*Jill Gehman Koestel,* for defendant.

EHRLICH, *J.,* May 1, 1995—The parties to this action were divorced by decree entered on September 5, 1990. The decree incorporated the parties' postnuptial agreement of July 18, 1990. The issue before the court involves interpretation of paragraph 2 of that agreement, which provides as follows:

"(2) *Alimony:*

"Commencing August 1, 1990 wife shall pay to husband the sum of $2,000 per month as alimony, which payments shall continue until husband's death, husband's remarriage, or 60 months from the execution of the within agreement, whichever shall first occur. It is the intention of the parties that husband's cohabi-

tation for a period in excess of 30 consecutive days with any person on a conjugal basis, with no requirement that either cohabitor contribute to the support of the other, shall be the equivalent of his remarriage for the purposes of this paragraph."

In January 1992, defendant, wife, through counsel, informed plaintiff, husband, in writing that alimony payments would cease immediately. It was wife's contention that husband's relationship with Barbara Robinson relieved her of the obligation to continue to make alimony payments under the agreement. On or about September 1, 1992, husband filed a petition for contempt alleging that wife was in violation of the postnuptial agreement and requesting that she be held in contempt of court; that she be required to make up the missed payments and to continue the monthly payments thereafter as provided in the agreement; that she be required to post a bond for the remaining balance of alimony payable under the agreement; and that she be required to pay husband's counsel fees, costs, and expenses incurred in the filing of the petition. Wife filed an answer to the petition denying that any alimony payments were owed, based on husband's alleged cohabitation with Barbara Robinson.

The parties then engaged in contested discovery proceedings, followed by many continuances and extended hearings. At the conclusion of the hearings, the parties were directed to file memoranda of law with respect to the interpretation of paragraph 2 of the postnuptial agreement, including proposed findings of fact and proposed conclusions of law. Wife has filed a comprehensive and thorough memorandum of law. Despite extensions of time, husband has failed to file the required memorandum. Nevertheless, we believe it is the court's obligation to address the issues raised in this proceeding on their merits.

Although both parties have introduced many extraneous and emotional factors which illustrate why this marriage is no longer in existence, the legal issue is a simple one: whether wife has established by a preponderance of the evidence that husband has cohabited with Barbara Robinson for a period in excess of 30 consecutive days on a conjugal basis.

Property settlement and postnuptial agreements are construed and enforced in accordance with the same rules of law applicable to contracts generally. *Trumpp v. Trumpp,* 351 Pa. Super. 205, 505 A.2d 601 (1985); *D'Huy v. D'Huy,* 390 Pa. Super. 509, 568 A.2d 1289 (1990); *Lyons v. Lyons,* 401 Pa. Super. 271, 585 A.2d 42 (1991). In interpreting contract provisions, each word and each phrase must be given its normal meaning in the absence of any ambiguity. This contract is not ambiguous. It sets forth clearly that wife's alimony payments to husband shall continue for 60 months unless husband cohabits on a conjugal basis with another individual for a period in excess of 30 consecutive days. The burden is on wife to prove that this condition has occurred.

In the hearings, wife relied heavily on the testimony of Lawrence Hogan, a private investigator she hired. Mr. Hogan testified to the following observations: he saw husband at an auction with Ms. Robinson and her son; he observed an incident in which Ms. Robinson and wife engaged in a hostile encounter, apparently initiated by Ms. Robinson; he saw husband and Ms. Robinson together after a zoning hearing in Kutztown; he observed them kissing, returning to Ms. Robinson's home, and husband emerging the next morning in different clothing; he saw husband escort Ms. Robinson's child to a school bus stop three times; he saw husband drive a blue GMC pickup truck; he saw husband cut the lawn at the home Barbara Robinson shared with her mother and take trash out; he saw husband emerge

from the house in different clothes than he wore when he entered, on three occasions; he saw husband with Barbara Robinson at a restaurant where they demonstrated "extreme friendliness;" he saw husband and Barbara Robinson at a barn. Wife also relied on the testimony of Arthur A. Beers, another private investigator. Mr. Beers testified that he went to Ms. Robinson's home 25 times between November 1 and November 25, 1991, and saw husband sitting at a table three times during that period; he also saw husband leave the house and go jogging; and entering the house.

Wife had no independent observations or information regarding husband's relationship with Ms. Robinson, other than the incident when the two women engaged in the dispute observed by Mr. Hogan. It is clear from her testimony that wife believes that husband got more than he deserved in the marriage dissolution proceedings, and that she resents continuing to provide funds to him after having supported him during much of the marriage. While wife's attitude is understandable, it is irrelevant to the issue to be decided, particularly since the alimony was not court-imposed but ordered pursuant to agreement of the parties.

Husband testified that he slept at the barn owned by the parties, in his truck, at the homes of various friends, and in motels. He denied that he resided with Barbara Robinson on a conjugal basis. He testified that although he had eaten and slept at the Robinson home, it was at the invitation of Madeline Robinson, Barbara's mother, who was his friend. He further testified that he did not have a shared bank account with Barbara Robinson; that he did not have a marital relationship with her; and that although he sometimes stayed in the Robinsons' house during October and November 1991, he also stayed in the barn, in motels, and in friends' homes.

Wife introduced newsletters from the school attended by Barbara Robinson's son. Husband's name is mentioned along with a list of "parents" who volunteered their time and participated in various functions. Wife argues that husband had a parental relationship with Barbara Robinson's son and that therefore his relationship with Barbara Robinson was conjugal. However, a representative of the school testified that husband was mentioned with other varied individuals who had participated in school functions.

The Superior Court of Pennsylvania has defined the word "cohabitation" as follows:

"We hold . . . that cohabitation . . . requires that two persons of the opposite sex reside together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage relationship. Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means." *Miller v. Miller,* 352 Pa. Super. 432, 439, 508 A.2d 550, 554 (1986).

In the *Miller* case, the court found that although the parties spent weekends together, and the man had advanced funds to the woman, they were not cohabiting since they did not "share a common home on a permanent basis" or "mutually share their respective incomes and expenses." *Id.* at 441, 508 A.2d at 555.

Wife cites *McCarty v. McCarty,* 29 D.&C.3d 687 (Lycoming County, 1984), to support her contention that husband cohabited with Barbara Robinson for a period of more than 30 days. In *McCarty,* the trial court concluded that a woman was cohabiting with a man for purposes of section 507 of the Divorce Code, even though she slept at her parents' home from Monday through Thursday evenings. *McCarty* is distinguishable from the case before the court in important ways: the couple there had established a joint checking account

from which each made disbursements; the couple had announced their engagement to be married; the parties worked different shifts and the woman had a minor child who resided at her parents' home and who went to school from their home. Moreover the alimony in *McCarty* was court-ordered rather than by agreement, so that the requirement that the cohabitation be for 30 consecutive days (or for any specific length of time) was not present.

It is clear that husband has spent considerable time with Barbara Robinson and that he has stayed overnight on various occasions. We discount much of husband's testimony as unworthy of belief. Nevertheless, it is not husband's obligation to disprove wife's contentions. Rather, it is wife's obligation to establish by a preponderance of the evidence that husband and Barbara Robinson have lived on a conjugal basis for a period in excess of 30 *consecutive* days. The postnuptial agreement does not require husband to be celibate or without social or romantic involvement. Nor is he prohibited from spending the evening or all night with someone.

No evidence was presented that husband and Barbara Robinson have commingled their funds or opened a joint bank account. The fact that husband from time to time changed clothes at the Robinson residence is not probative of where his clothing and other belongings were located. Indeed, there was testimony that he brought clothing with him when he stayed overnight.

We have previously held that when a postnuptial agreement specifies a minimum length of time for cohabitation to continue in order to terminate alimony payments, that proving cohabitation for less than the specified time will not terminate the alimony. *Goodyear v. Goodyear,* 4 November 1984, A.D. (June 12, 1990). Although wife's investigators observed husband at the Robinson residence on various occasions and performing tasks frequently performed by residents, neither

investigator testified that such conduct continued for a period in excess of 30 consecutive days; or that husband was even at the residence for 30 consecutive days; or to any other indicia that his relationship with Barbara Robinson was "conjugal" for that length of time. There is simply insufficient evidence to establish what wife would like us to conclude, namely, that husband lived with Barbara Robinson on a conjugal basis for more than 30 consecutive days.

The remaining issue relates to counsel fees and expenses. Both parties have requested an award of counsel fees and costs. Wife is not entitled to reimbursement of counsel fees and costs since she discontinued paying the alimony required by the divorce decree without judicial sanction. While husband might have been entitled to counsel fees and costs, his failure to file the required proposed findings of fact and proposed conclusions of law, thereby failing to itemize such expenses, constitutes a waiver of his claim for counsel fees and costs.

For the above reasons, we enter the following order:

## ORDER

And now, May 1, 1995, it is hereby ordered and decreed as follows:

(1) Defendant has failed to prove by a preponderance of the evidence that plaintiff has cohabited with another individual on a conjugal basis for a period in excess of 30 days.

(2) Defendant shall transmit to plaintiff the payments deposited into the escrow account pursuant to the order of February 2, 1993.

(3) Any omitted payments not deposited into the escrow account shall be paid by defendant to plaintiff within 30 days hereof.

(4) Defendant shall resume making the monthly alimony payments pursuant to paragraph 2 of the post-nuptial agreement.

(5) Neither party is obligated to pay counsel fees or costs to the other party.

(6) No bond is required to be posted.