**William E. LOBAUGH, Appellee,**

v.

**Nancy LOBAUGH, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 14, 2000.
Filed May 30, 2000.

As part of their divorce settlement, the parties entered into a marital property settlement agreement on January 13, 1999. In July of that year, Appellee petitioned the Trial Court to terminate Appellant's right to collect alimony due to her non-compliance with the terms of the parties' agreement. Specifically, Appellee argued that Appellant was cohabiting with another man and that he was no longer liable to pay her alimony. The Trial Court held a hearing on the matter on August 16, 1999. The Trial Court entered an order granting Appellee's request to terminate his alimony obligation on August 24, 1999 and made it retroactive to the filing date of his petition, July 7, 1999. Under the order, Appellant was also liable for Appellee's reasonable attorney fees, expenses and court costs in compliance with the terms of the parties' marital property settlement agreement. This timely appeal follows.

¶ 3 Appellant raises two (2) issues for our consideration:

1. DID THE COURT ERR IN DETERMINING THAT THERE WAS COHABITATION UNDER TITLE 23 PA.C.S.A. SECTION 3706 WITH REGARD TO ALIMONY?

2. DID THE COURT ERR IN NOT LIMITING THE TIME PERIOD FOR THE TERMINATION OF ALIMONY TO THE TIME PERIOD OF COHABITATION?

Appellant's Brief at 3. In reviewing alimony orders, "we review only to determine whether there has been an error of law or abuse of discretion by the trial court. An abuse of discretion entails a misapplication of the law or a manifestly unreasonable judgment in light of the record." *Peck v. Peck*, 707 A.2d 1163, 1164 (Pa.Super.1998) (citations omitted).

¶ 4 Our review of the parties' divorce decree reveals that the parties' marriage property settlement agreement is subject to enforcement under 23 Pa.C.S.A. § 3105, entitled, Effect of agreement between parties. With respect to the parties' alimony

Donald W. Grieshober, Erie, for appellant.

James J. Bruno, Erie, for appellee.

Before HUDOCK, J., CERCONE, President Judge Emeritus, and BECK, J.

CERCONE, President Judge Emeritus:

¶ 1 This is a direct appeal from an order terminating Appellant's alimony pursuant to the parties' marital property settlement agreement. We affirm.

¶ 2 The parties married in July of 1980 and were divorced on January 29, 1999.

provision under the terms of the agreement, enforcement is controlled specifically under Section 3105(c). *See* Marital Property Settlement Agreement, 1/13/99, at 6–7 ¶ 12. That section of the statute provides:

> In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, **alimony**, alimony pendente lite counsel fees or expenses **shall not be subject to modification by the court.**

23 Pa.C.S.A. § 3105(c) (emphasis supplied). Also, the agreement between the parties provides that "unless otherwise specifically provided herein, this Agreement shall continue in full force and effect after such time as a final decree in divorce may be entered with respect to the parties." *See* Marital Property Settlement Agreement, 1/13/99, at 2 ¶ 2. Moreover, the agreement reads that "no modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both parties." *Id.*, at 6 ¶ 12. Thus, it is clear that the parties' language in their agreement, a contract, concerning issues of alimony is controlling.

■ ¶ 5 We recognize that "[a] basic tenet of contract law is that when the language of a contract is clear and unambiguous its meaning must be determined by an examination of the content of the contract itself." *Little v. Little*, 441 Pa.Super. 185, 657 A.2d 12, 15 (1995). Therefore, it is axiomatic that this Court "must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *Id.* With respect to alimony, the agreement states:

> It is agreed that wife shall receive $350.00 per month for thirty-six (36) consecutive months following the entry of the Divorce Decree. Alimony shall terminate earlier upon the death of Husband, the death of Wife, or the remarriage or cohabitation of Wife as defined under the Divorce Code....

*See* Marital Property Settlement Agreement, at 11–12 ¶ 32. Although not specifically defined in the Divorce Code, in order to be found in "cohabitation" one must *at least* be doing so "with a person of the opposite sex who is not a member of the family of the petitioner [alimony recipient] within the degrees of consanguinity." 23 Pa.C.S.A. § 3706. We have elaborated further by holding that cohabitation, for purposes of barring alimony, occurs when:

> two persons of the opposite sex reside together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage relationship. Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means.... An occasional sexual liaison, however, does not constitute cohabitation.

*Miller v. Miller*, 352 Pa.Super. 432, 508 A.2d 550, 554 (1986).

¶ 6 In light of foregoing legal analysis, Appellant avers that the Trial Court erred in ruling that cohabitation occurred in this case so as to effectuate the termination of her alimony. Specifically, Appellant submits that:

> [i]t is contended that it should be ruled that there was no cohabitation on a legal basis in the case here at issue. There was no showing of sexual interdependence. There was no commingling interdependence with regard to financial matters in any manner. There was no expressed intention to marry in the future. There was no establishment of an intent to cohabit, nor was there any determination that in fact the particular parties, Nancy Lobaugh and Thomas Jones made a commitment to each other, and in fact just the reverse occurred. There was no commitment and this was a temporary matter from the standpoint of residing in the same home together.

Appellant's Brief at 10–11. We have read carefully the testimony presented to the Trial Court at the August 16, 1999 hearing

and we conclude that the Trial Court did not err in its ruling concerning "cohabitation" in this matter.

¶ 7 The record supports the fact that Tom Jones and his son, Jeremy, primarily resided in Appellant's home from some point in January of 1999 until early April of that year. The focus becomes whether this living arrangement can be characterized as "cohabitation" so as to effect Appellant's right to alimony under the terms of the parties' agreement. Appellant maintains that she was helping a close friend who was ill at the time with his personal needs as well as those of his of his school-aged child. However, the parties' son, Steven, testified that the living arrangement was that Tom Jones resided in his mother's bedroom, even though there was another bedroom (that was used as an office-type room) that could have accommodated Jones. Also, Steven testified that Appellant and Jones were affectionate towards one another and often kissed, hugged and held hands, even though Appellant and Jones denied having a "sexual relationship." Appellant, Jones and their respective sons ate meals together, either at home or out, and attended church weekly. Jones often took the boys to school, bought mattresses for each of the boys' bedrooms as well as Appellant's, received telephone calls at Appellant's home and made some minor household repairs. Although Jones did not contribute to the household bills, he often paid for the meals the foursome ate outside of the home.

¶ 8 However, the record does display that Jones did not have an income at the time he lived in Appellant's home because he was waiting for confirmation regarding his qualification for Social Security disability income. Nevertheless, the money that he did have from selling a motorcycle and payments from governmental assistance, he used to pay for the foursome's meals and the mattresses. Also, Jones acknowledged that he did have a rental lease on a home during the time period in question, but that the lease had started in August of 1998, prior to his time with Appellant, and continued through July of 1999. Finally, both Appellant and Jones acknowledged that Jones and Jeremy moved out of Appellant's home due to the escalating discord between Jeremy, Appellant and Steven.

¶ 9 Based upon the foregoing, we agree with the Trial Court that the evidence of record does support Appellee's contention that Appellant and Jones were "cohabiting." We believe that the evidence belies Appellant's assertion that she was merely helping an ill friend and his son. In fact, we conclude, as did the Trial Court, that Appellant and Jones were residing together in the manner of husband and wife; thereby, mutually assuming those rights and duties usually attendant upon a marital relationship. *Miller v. Miller, supra.* Moreover, we agree with the Trial Court's assessment that "[h]ad the group been able to live in harmony, the Court is not convinced that the living arrangement could not have continued indefinitely." Trial Court Opinion, 10/18/99, at 6.

¶ 10 Next, Appellant submits that her award of alimony should only be barred for that period of time that she "cohabited," if that finding is made by the Court. Also, Appellant baldly avers that any supposed "cohabitation" ended before Appellee filed his termination petition; therefore, Appellee's argument is moot. We note that Appellant filed a statement of matters complained of on appeal, pursuant to the Trial Court's order, on September 22, 1999 and did not raise these issues in her statement. *See* Concise Statement on Behalf of Defendant, Nancy Lobaugh, filed 9/22/99. Our Supreme Court has held that from October 28, 1998, forward, that when a trial court orders an appellant to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) that "[a]ny issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Lord,* 553 Pa. 415, 420, 719

A.2d 306, 309 (1998). Hence, it is clear that Appellant's final issues are deemed waived for our review. *Id., See also, Giles v. Douglass*, 747 A.2d 1236 (Pa.Super.2000) (application of *Lord* in custody matter).

¶ 11 Assuming *arguendo* that waiver is not applicable here, it is clear from the terms of the parties' agreement that Appellant's alimony would terminate upon her cohabitation without any further provisions regarding the limitation of said alimony to any specific period of cohabitation. *See* Marital Property Settlement Agreement, 1/13/99, at 11–12 ¶ 32. As the agreement plainly sets forth the terms of the parties' covenant, we will not modify its terms or meaning under the guise of interpretation. *Little v. Little, supra.* Finally, Appellant's suggestion that Appellee's termination of alimony request is moot because it was filed after the "cohabitation" occurred is not only illogical, but said argument undermines the specific terms of the parties' agreement. Accordingly, we are compelled to affirm the Trial Court's order terminating Appellant's alimony.

¶ 12 Order affirmed.

¶ 13 BECK, J., files a dissenting opinion.

BECK, J., dissenting:

¶ 1 I dissent. Contrary to the majority, I cannot conclude that the living arrangement between Nancy Lobaugh and Thomas Jones meets the definition for cohabitation barring alimony under the Pennsylvania Divorce Code. This definition is critical because under our law alimony ceases upon proof of cohabitation.

Consequently, a finding of cohabitation nullifies a court award of alimony that was entered based on the needs of the dependent spouse and that has intended to establish economic justice between divorcing spouses. *See Musko v. Musko*, 447 Pa.Super. 150, 668 A.2d 561, 565 (1995), *rev'd on other grounds*, 548 Pa. 378, 697 A.2d 255 (1997).

¶ 2 Although few Pennsylvania cases define "cohabitation" for purposes of barring alimony, each makes clear that cohabitation will be found only if a relationship can be analogized to marriage.[1] A party should not be entitled to alimony if he or she has established a marital-like relationship with another that has qualities of stability, permanence and mutual interdependence. Such interdependence is reflected in the way two persons share their life together as a couple: it encompasses not only the social, emotional and sexual, but also the economic aspects of the relationship. Thus, determination that a relationship akin to marriage has been established requires a careful weighing of all the circumstances in each case. No single factor should obscure the assessment of whether there has been sufficient change in the life of the party receiving alimony to warrant its denial.

¶ 3 Despite this multifaceted standard, the majority finds the living arrangement between Nancy Lobaugh and Tom Jones to be the measure of a marriage. My review of this record, however, leads me to conclude that this relationship was never intended to involve the assumption of mutual rights and duties: it was designed to help Jones cope with the consequences of

---

1. *See* Majority Opinion at 836 (quoting *Miller v. Miller*, 352 Pa.Super. 432, 508 A.2d 550 (1986)). *See also Thomas v. Thomas*, 335 Pa.Super. 41, 483 A.2d 945 (1984) (cohabitation means the mutual assumption of those rights and duties attendant to the relationship of husband and wife). The comments of Rep. Cunningham of Centre County during the legislative debates on the predecessor statute to 23 Pa.C.S. § 3706, also emphasize the substantial nature of a relationship that would equate to cohabitation:

> Cohabitation is clearly not remaining at someone's house overnight. It is clearly not remaining ... for the weekend. Cohabitation is a definition that has to be viewed in light of the facts of each individual case.... *We are talking about a consistent pattern of conduct established over a substantial period of time with one person.*

*Id.*, at 946 (emphasis added) (quoting HJ 1843L, reprinted in J.A. Rounick, Pa. Matrimonial Practice, Part 3, Appendix B at 42–43 (1983)).

serious illness.[2] The evidence established that he feared being alone at night, needed help with daily living and required assistance with his son. Although unemployed, he took on almost no responsibilities in Ms. Lobaugh's home and continued to spend considerable time both days and evenings in his own apartment.[3] He did not share in the expenses of the household: his contributions were limited to three mattresses and meals eaten in restaurants. He did not co-mingle his funds with hers, but he paid rent for his own residence and remained part-owner of another house. Ms. Lobaugh, for her part, continued to work full-time and to manage a household newly complicated by the presence of a problematic child.[4] Within nine weeks, this arrangement ended not because of problems between Nancy Laubaugh and Tom Jones, who maintain their close 28–year friendship, but because the tension created by Jones' son resulted in more rather than less stress for him.

¶ 4 I find no indicia of mutuality in the emotional, social or financial aspects of this relationship: this was a living arrangement for the benefit of Mr. Jones. There is no evidence of social interdependence within family or community other than eating in restaurants and attending mass with their sons. Financially, Ms. Lobaugh's household budget was unchanged; the cost increment for food and utilities for Mr. Jones and his son was offset by Mr. Jones' restaurant invitations and the mattresses. Moreover, the brevity of the arrangement and the ease with which it was definitively terminated belie a long term commitment or objective of permanency. Under our law, such a short-lived relationship absent the hallmarks of a marriage cannot be construed as cohabitation and should not result in the loss of alimony.

¶ 5 The majority, however, reads the definition of cohabitation narrowly, emphasizing, as did the trial court, the inference that Nancy Lobaugh and Tom Jones were sexually intimate. As a result, Nancy Lobaugh is now denied the remaining 30 months of $350.00 alimony awarded to her by the court in her divorce from Willaim Lobaugh. Although faced with the identical situation that existed when alimony was awarded, she is deprived of $10,500.00 in alimony because of a brief, nine-week relationship in which there was no expectation, and thus no evidence of stability, permanence or mutual interdependence. The majority's decision does not comport with our law nor does it comport with fundamental fairness. I, therefore, dissent.

2. Mr. Jones suffered from heart disease and lymphatic cancer. Even Steven Lobaugh, the parties' son, testified that Jones moved in so his mom could help Jones during his illness. N.T., 8/16/99, at 61.

3. The investigator hired by Nancy Lobaugh's husband to undertake surveillance of her home from March 15, 1999 to April 2, 1999 testified that Jones was not there from March 18 to 24, and could only confirm he spent the night on six occasions. N.T., 8/16/99, at 34, 27–30.

4. Nancy Lobaugh testified that Jeremy's mother did not help with the boy because she could not handle him. N.T., 8/16/99 at 79.