## Koehler v. Koehler

*Martricia O'Donnell McLaughlin,* for plaintiff.
*Shannon Piergallini Smith,* for defendant.

ZITO, *J.,* June 17, 2005—

## STATEMENT OF REASONS

### *Findings of Fact*

Plaintiff, Paul M. Koehler, and defendant, Lisa A. Koehler, divorced and entered into a property settlement agreement on September 5, 2001, under which Paul Koehler would pay Lisa Koehler $30,000 annually for five years, payable $2,500 monthly. Paragraph seven of the agreement states: "Wife's remarriage or *cohabitation* shall terminate this alimony award." (emphasis added) On November 30, 2004, plaintiff filed a petition to terminate alimony, alleging that Lisa Koehler has cohabited with another man, thereby terminating alimony per the agreement. Non-jury trial was held on January 24, 2005.

The agreement was drafted by the special master in divorce, Ellen Kraft. (Tr. at 78-79.) The agreement states that the parties signed "after conference with the special master and after full opportunity for consult with independent legal counsel." The court asked questions at the non-jury trial to elicit whether the parties had an under-

stood intent on September 5, 2001, of "cohabitation" beyond the language in the agreement. (Tr. at 63-65, 77-80.) Neither party introduced into the record an intended meaning extrinsic to the agreement that existed on or before September 5, 2001. *Id.* In response to the court's inquiry, the parties offered conflicting present sense interpretations of "cohabitation." *Id.* Lisa Koehler stated that to her, "Cohabitation would be if a gentleman would move in with me or I would move in with a gentleman for a long period of time or forever. Or if I would request I would get married to the man." (Tr. at 64-65.) Paul Koehler stated that to him, "Cohabitation would be living with another man or man living with her or they get married," that "it doesn't matter if you live there a week, a year, or a month, or forever," and that the evidence in this case would fit his definition. (Tr. at 77-78.) The court finds that the intent of the parties on September 5, 2001, as to the meaning of "cohabitation" was to defer to the special master as having included an appropriate legal provision, and, therefore, intended a legal meaning consistent with the prior case law of this Commonwealth.

The following facts set forth the court's findings on the evidence relevant to whether Lisa Koehler cohabited with Todd Hahn during October 2004. In October 2004, Lisa Koehler was residing at 2121 Main Street, Northampton, Pennsylvania. (Tr. at 50.) During this month, Lisa Koehler was also in a dating relationship with Todd Hahn. Lisa Koehler and Todd Hahn were publicly affectionate toward each other, went out on dates and shared food while out to dinner and "once in awhile" at Lisa Koehler's apartment. (Tr. at 18-19, 58-60.) Todd Hahn slept over eight to 10 times during October 2004.

(Tr. at 52.) Todd Hahn kept cologne, a toothbrush, and one to two changes of clothing at Lisa Koehler's apartment. (Tr. at 15-16, 53-54). Lisa Koehler and Todd Hahn did not have any joint bank accounts or own anything together. (Tr. at 71.)

When Hahn began dating Lisa Koehler, he had an apartment in Bath, Pennsylvania. (Tr. at 50-51.) Hahn moved out of that apartment near the end of September or beginning of October and thereafter "resid[ed] with his grandmother during the month of October of 2004." (Tr. at 51-52, 66-67.) With the exceptions discussed above, Hahn's belongings were kept at his grandmother's home. (Tr. at 57, 68.) Hahn gave Lisa Koehler a dresser when he moved into his grandmother's home because "the storage [he] had gotten was too small for all of [his] stuff to fit in" and because she "needed extra storage for [her] pillows, blankets and so forth." (Tr. at 21, 54, 68.) During October 2004, Todd Hahn worked Monday through Friday from 11 p.m. to 7 a.m. (Tr. 22, 54-55.)

Lisa Koehler does not pay any of Todd Hahn's bills and Todd Hahn does not pay any of Lisa Koehler's bills. (Tr. at 55.) Todd Hahn has loaned money to Lisa Koehler but "as soon as [she] would get [her] check from [Paul Koehler she] would have to pay [Hahn] back." (Tr. at 58.) Lisa Koehler's cable and phone bills were under Todd Hahn's name but Lisa Koehler "always paid the cable and phone [bills]." (Tr. at 61.) Lisa Koehler had "an outstanding balance with the [provider of the cable and phone services] that precluded [her] from having [] service in [her] name." (Tr. at 63.)

## Conclusions of Law

(1) Inclusion of the term "cohabitation" within the property settlement agreement without definition or citation to an extrinsic source created an ambiguity inviting parole evidence as to meaning. *Kripp v. Kripp,* 578 Pa. 82, 849 A.2d 1159 (2004).

(2) The court's inquiry of the parties on this issue led to the court's finding that the parties deferred to the special master in divorce for the inclusion of an appropriate legal provision, and, therefore, intended "cohabitation" to be given its legal meaning.

(3) An appropriate legal definition of "cohabitation" consistent with the case law as of September 5, 2001, is "two persons of the opposite sex resid[ing] together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage relationship." *Miller v. Miller,* 352 Pa. Super. 432, 439, 508 A.2d 550, 554 (1986). "Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means . . . . An occasional sexual liaison, however, does not constitute cohabitation." *Id.*

(4) The evidence does not establish that Lisa Koehler and Todd Hahn resided together in the manner of husband and wife, mutually assuming the rights and duties usually attendant to a relationship between married persons. Rather, they maintained separate residences and paid their own bills. To the extent that Lisa Koehler was financially assisted by, and shared company with, Todd Hahn, their actions were consistent with a dating, noncohabiting relationship.

(5) Alternatively, the court could view the parties as having intended a "common usage" definition of "cohabitation." See *Pines Plaza Bowling Inc. v. Rossview Inc.,* 394 Pa. 124, 145 A.2d 672 (1958) (where undefined, words of a contract are given their ordinary meaning). Dictionaries vary as to the ordinary meaning of "cohabitation"; however, consistent among them is a requirement of living together. See *Kripp v. Kripp,* 578 Pa. 82, 849 A.2d 1159 (2004) (discussing the various dictionary definitions).

(6) At no time did Lisa Koehler and Todd Hahn live together. Staying over eight to 10 times at a girlfriend's apartment over the period of a month would give an unreasonable meaning to "living together" or "cohabitation" and was not intended by the parties on September 5, 2001.

## ORDER

And now, June 17, 2005, plaintiff's petition to terminate alimony is denied.