J-A33023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JENNIFER DELLA GUARDIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES DELLA GUARDIA | |
| Appellant | No. 136 EDA 2015 |

Appeal from the Order Dated November 20, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No: No. 2010-04664

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:          **FILED MARCH 30, 2016**

Appellant James Della Guardia ("Husband") appeals from the November 20, 2014 order of the Court of Common Pleas of Montgomery County ("trial court"), which denied his petition for contempt and enforcement of a property settlement agreement executed between him and Appellee Jennifer Della Guardia ("Wife") and granted Wife's counterclaim, directing Husband to pay Wife $6,415.00 in attorney's fees.  Upon review, we affirm.

The facts and procedural history underlying this appeal are undisputed.  In 2010, Wife filed a complaint in divorce against Husband.  On February 21, 2012, the parties entered into a "Stipulation for Agreed Order

_____

[*] Retired Senior Judge assigned to the Superior Court.

in Support" ("Stipulation Order"). Paragraph 5 of the Stipulation Order provides in relevant part:

> "The Parties have entered into a comprehensive Property Settlement Agreement which includes a provision of alimony/alimony pendent [sic] lite for Wife as follows:
>
> > Husband is currently obligated to pay Wife alimony pendente lite at the rate of $4,452,00 per month. Husband shall continue to be so obligated through February 29, 2012. Commencing March 1, 2012 and for a period of 18 months thereafter, Husband shall pay to Wife as alimony/alimony pendente lite, the sum of $2,550.00 per month. This payment shall be non-modifiable in amount and duration. However, this obligation shall terminate upon earliest of the following: 1) Wife's cohabitation, 2) Wife's remarriage, 3) Wife's death, 4) Husband's death, or 5) August 31, 2013, provided all payments contemplated herein have been paid.

Stipulation Order, 2/21/12 at ¶ 5A. On February 22, 2012, Husband and Wife entered into a property settlement agreement ("PSA"), which incorporated and restated Paragraph 5 of the Stipulation Order. *See* PSA, 2/22/12 at ¶ 19. Moreover, Paragraph 24 of the PSA, pertaining to enforcement, provides:

> Each party further hereby agrees to pay and to save and hold harmless the other party from any and all reasonable attorney's fees, and costs of litigation that either may sustain, or incur, or become liable for, in any way whatsoever, or shall pay upon, or in consequence of any default or breach by the other of any of the terms or provisions of this Agreement by reason of which either party shall be obliged to retain or engage counsel to initiate or maintain or defend proceedings against the other at law or equity or both or in any way whatsoever; provided that the party who seeks to recover such reasonable attorney's fees, and costs of litigation must first be successful in whole or in part; before there would be any liability for said reasonable attorney's fees, and costs of litigation. It is the specific agreement and intent of the parties that a breaching or wrongdoing party shall bear the burden and obligation of any and all costs and expenses and counsel fees incurred by himself or herself as well as the other party. In endeavoring to protect and enforce his or her rights under this Agreement. The Court shall determine the reasonableness of the attorney fee award.

*Id.* at ¶ 24. On February 28, 2013, Husband filed a "Petition for contempt and to Enforce Stipulation for Agreed Order in Support." Husband alleged that Wife was cohabiting with her paramour, Dan Falcone ("Mr. Falcone"), "since on or about October 25, 2010" in violation of the alimony provisions of the Stipulation Order and the PSA. Husband's Contempt and Enforcement Petition, 2/28/13, at ¶ 6. Based on this allegation, Husband argued that Wife was not entitled to any alimony payments made under the Stipulation Order. Wife answered the contempt petition, denying that she was cohabiting with anyone. Wife's Amended Answer, 1/22/14, at ¶ 6. Wife also raised a counterclaim for attorney's fees under Paragraph 24 of the PSA. Specifically, Wife requested counsel fees in the event she prevailed on Husband's contempt and enforcement petition. *Id.* at ¶ 22.

The trial court held hearings on Husband's petition for contempt and enforcement, at which Husband, Wife, the parties' minor daughter, and Mr. Falcone testified. The trial court summarized the testimony as follows:

> At the . . . hearing, [Wife] testified . . . that she lived at her residence with only her two daughters until September, 2013, when her boyfriend, Dan Falcone, moved in. Prior to September, 2013, Mr. Falcone "occasionally" stayed at her residence overnight. [Wife] testified that prior to September, 2013, Mr. Falcone would stay overnight anywhere from "zero to five" nights in a two week period. Wife testified that that Mr. Falcone would keep his personal items such as clothes in an overnight bag only, and did not keep other personal belongings in her residence. [She] stated that Mr. Falcone never stayed overnight at her residence prior to September, 2013 when her two daughters were there.
>
> The parties' daughter, [J.D.G.], testified . . . that on one occasion she took a picture of Mr. Falcone's laundry at her mother's residence and that Mr. Falcone would ". . . bring clothes and have them washed there." [She further] testified that between March, 2012 and September, 2013, Mr. Falcone

never stayed overnight at her mother's residence when she and her sister were living there. When asked by [Husband's] counsel if she had any direct information or knowledge that Mr. Falcone moved into [Wife's] residence before November, 2013, [J.D.G.] testified that she did not.

. . . [Husband] testified as to what he believed the nature of [Wife's] relationship was with Mr. Falcone prior to their moving in together in September, 2013. However, [Husband] testified to matters as far back as January, 2010, which is almost two years prior to the parties['] signing the [PSA]. Therefore, the majority of [Husband's] testimony was irrelevant for purposes of the issue before the court which was whether or not [Wife] had cohabit[ed] with Mr. Falcone between February, 2012 and September, 2013. [Husband] testified that he had seen Mr. Falcone's car parked outside [Wife's] residence several times prior to September, 2013. [Husband] testified that in his "opinion," and that it was his "belief," that [Wife] and Mr. Falcone were living together prior to signing the PSA in February, 2012, yet despite this, he signed the agreement which includes the provision that alimony would terminate upon [Wife's] "cohabitation" with a man. [Husband] testified that he has never been inside Wife's residence.

. . . [Wife] testified . . . Mr. Falcone never paid rent at her residence, he never paid any of the bills, he never received mail there, he never did any household chores or helped to maintain the home, he never mowed the lawn, or cleaned the house. Prior to September, 2013, Mr. Falcone never ate breakfast or lunch at [Wife's] residence, but, occasionally, ate dinner there. [She] testified that she and Mr. Falcone did not support each other financially prior to September, 2013, and she did not hold Mr. Falcone out as her husband in the community.

Mr. Falcone testified . . . that he began living with [Wife] in September, 2013. Mr. Falcone testified that he paid rent at a separate address through August, 2013. He testified that prior to September, 2013, he never stayed overnight at [Wife's] residence when her daughters were present. [He] also testified that prior to September, 2013, he never paid rent or any bills at [Wife's] residence, he did not do any chores at the house or perform any maintenance on the property, and he did not keep personal items or clothing there. Mr. Falcone testified that prior to September, 2013, he never used [Wife's] home phone number as a number where people could reach him, and he never bought food for [Wife's] house. He stated that prior to September, 2013, he never held [Wife] out as a person who was either his wife or someone he was living with.

Trial Court Opinion, 2/26/15, at 3-6. Following the hearings, and based on the foregoing findings, the trial court concluded that Wife and Mr. Falcone

- 4 -

did not cohabit prior to September 2013. As a result, on November 20, 2014, the trial court denied Husband's petition for contempt and enforcement and granted Wife's request for attorney's fees under Paragraph 24 of the PSA. Husband timely appealed to this Court.

As directed by the trial court, Husband filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, raising ten assertions of error. First, Husband argued that the trial court's determination that Wife did not cohabi with Mr. Falcone was inconsistent with our Supreme Court's decision in **Kripp v. Kripp**, 849 A.2d 1159 (Pa. 2004). Second, Husband argued that the trial court's determination that Wife did not cohabit with Mr. Falcone was inconsistent with our decision in **Moran v. Moran**, 839 A.2d 1091 (Pa. Super. 2003). Third, Husband argued that the trial court's determination that Wife did not cohabit with Mr. Falcone was inconsistent with our decision in **Miller v. Miller**, 508 A.2d 550 (Pa. Super. 1986). Fourth, Husband argues that the trial court's determination that Wife did not cohabit with Mr. Falcone was inconsistent with our decision in **Lobaugh v. Lobaugh**, 753 A.2d 834 (Pa. Super. 2000). Fifth, Husband argued that the trial court's determination that Wife did not cohabit with Falcone was inconsistent with Section 507 of the Divorce Code, now codified at 23 Pa.C.S. § 3706.[1] Sixth,

_____

[1] Section 3706 of the Divorce Code provides:

> No petitioner is entitled to receive an award of alimony where the petitioner, subsequent to the divorce pursuant to which alimony is being sought, has entered into cohabitation with a

*(Footnote Continued Next Page)*

Husband argued that the trial court abused its discretion in disallowing Michele Harris to testify as an expert in the field of "surveillance." Seventh, Husband argued that the trial court abused its discretion in disallowing Michele Harris to testify pursuant to Pa.R.E. 803(6), relating to records of a regularly conducted activity. Eight, Husband argued that the trial court erred in permitting Wife to present evidence **after** moving for a directed verdict at the close of Husband's evidence. Ninth, Husband argued that the trial court erred in awarding counsel fees to Wife. Tenth, Husband argued that the trial court erred in denying his petition for contempt and enforcement.

In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, addressing Husband's assertions of error *in seriatim*. First, the trial court concluded that the instant case was distinguishable from **Kripp** because the term cohabitation *sub judice* was unambiguous as used in the Stipulation Order and the PSA. The trial court noted that the term cohabitation here applied to Wife living with a member of the opposite sex. **See** Trial Court Opinion, 2/26/15, at 12. Second, the trial court concluded that Husband was not entitled to relief on his **Moran** argument. Specifically, the trial court determined that the case at bar was factually distinguishable from **Moran** in

_(Footnote Continued)_ ─────────────

person of the opposite sex who is not a member of the family of the petitioner within the degrees of consanguinity.

23 Pa.C.S. § 3706.

- 6 -

part because Wife and Mr. Falcone maintained separate residences between February 2012 and September 2013 and were not financially or socially interdependent. *Id.* at 13-14. Third, the trial court concluded that Husband was not entitled to relief under *Miller*.[2] Fourth, the trial court concluded that Husband's argument under *Lobaugh* was without merit.[3] Fifth, the trial court determined that Husband's argument under Section 507 of the Divorce Code likewise lacked merit.[4] Sixth, the trial court concluded that it did not abuse its discretion in disallowing Michele Harris to testify as an expert in the field of "surveillance." Particularly, the trial court found that Husband "attempted to qualify Ms. Harris as an expert, seemingly, so Ms. Harris could testify about the contents of certain photographs and documents of which she herself had no firsthand knowledge. In fact, Ms. Harris testified that she

---

[2] We are puzzled by Husband's reliance on *Miller*, as it is similar to this case. In *Miller*, we determined that wife and her boyfriend did not cohabit because they shared only weekend sexual liaisons, they did not share a common home on a permanent basis, they maintained separate residences, and they did not mutually share their respective incomes and expenses. *Miller*, 508 A.2d at 555. Much like the boyfriend in *Miller*, Mr. Falcone only maintained one change of clothes in Wife's house.

[3] We note that *Lobaugh* is markedly distinguishable from the case *sub judice*. There, this Court held that wife and boyfriend were cohabiting when they resided together in wife's house for three months, were affectionate towards one another (despite denying having sex), had meals together and went to church together. The boyfriend often took wife's boys to school, bought mattresses for each of the boys' bedrooms as well as wife's, received telephone calls at wife's home and made some minor household repairs. *Lobaugh*, 753 A.2d at 837.

[4] We observe that Husband's fifth assertion of error is simply a rehash of his first four arguments.

personally never observed Mr. Falcone's car outside of [Wife's] residence." *Id.* at 16. The trial court declined to find her an expert in surveillance, because surveillance did not require any specialized, scientific, or technical knowledge beyond that of an average layperson.[5] *Id.* at 16-17. Seventh, the trial court concluded that it did not abuse its discretion in disallowing Ms. Harris to testify under Rule 803(6),[6] which permits introduction of business

_____

[5] As Wife points out, surveillance essentially involves only "watching and listening." Wife's Brief at 31.

[6] Rule 803(6) provides in part:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
>  . . . .
>
> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

records as an exception to the hearsay rule.[7]   Eighth, the trial court concluded that it did not err in permitting Wife to proceed with her case in chief, after denying Wife's motion for a directed verdict at the close of Husband's evidence.[8]   The trial court noted that, even though Wife used the phrase directed verdict, she intended to seek a motion to dismiss or a compulsory nonsuit.[9]   *Id.* at 19.   Ninth, the trial court concluded that it did

---

[7] We note that Husband's argument is hard to follow:  apparently, he thought Ms. Harris could, as a fact witness, authenticate notes and photos taken by other investigators in her office under Rule 803(6) and then testify as an expert as to the significance of these items.  As noted earlier, however, the trial court properly declined to admit Ms. Harris as an expert in surveillance.  Husband now seems to want to switch gears and have Ms. Harris testify as a fact witness.  If Ms. Harris were to testify as a fact witness, Husband could not satisfy Rule 803(6).  The "records" in question were notes and photos taken by other investigators.  Because Ms. Harris did not take the notes or the photos herself, she would not be able to authenticate them.  **See U.S. Bank v. Pautenis**, 118 A.3d 386, 401 (Pa. Super. 2015) (concluding that the court acted within its discretion in finding that bank's evidence regarding amount owed on loan by homeowner was insufficiently reliable to be admitted in mortgage foreclosure action under business records exception to hearsay rule, because representative of loan servicer could not authenticate documents created by bank or establish their trustworthiness).

[8] Rule 226(b) provides that "[a]t the close of all evidence, the trial judge may direct a verdict upon the oral or written motion of any party."  Pa.R.C.P. No. 226(b).

[9] We agree with the trial court that Wife's slip of the tongue did not prejudice Husband; "gotcha" claims like Husband's are properly denied under Pa.R.C.P. No. 126, relating to liberal construction and application of the rules. **See Green Acres Rehabilitation and Nursing Center v. Sullivan**, 113 A.3d 1261, 1272 ("Rule 126 allows an equitable exception for parties 'who commit a misstep when attempting to do what any particular rule requires.'  Rule 126 does not excuse a party's complete noncompliance with

*(Footnote Continued Next Page)*

not err in awarding Wife attorney's fees under Paragraph 24 of the PSA. Tenth, the trial court concluded that Husband's final argument was non-specific and vague and, as a result, did not merit relief. Alternatively, the trial court noted that Husband's last argument was redundant of his other arguments relating to cohabitation that the court properly rejected. The trial court determined that it did not err in holding that Wife did not cohabit with Mr. Falcone. Accordingly, Wife was not in contempt. *Id.* at 21-22.

On appeal,[10] Husband essentially repeats these same arguments for our review.[11] After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the trial court's Rule

_____
*(Footnote Continued)*

the rules, but Rule 126 'is available to a party who makes a substantial attempt to conform.'") (internal citation omitted).

[10] When reviewing the dismissal of a contempt petition, our standard of review is well-settled: "[i]n reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *P.H.D. v. R.R.D.*, 56 A.3d 702, 706 (Pa. Super. 2012), *appeal denied*, 94 A.3d 1010 (Pa. 2014).

[11] As wife correctly points out, to the extent Husband argues that the trial court erred in allowing him to introduce evidence of cohabitation predating the PSA, the argument is waived. Husband failed to raise this argument in his Rule 1925(b) statement. *See Dietrich v. Dietrich*, 923 A.2d 461, 463 (Pa. Super. 2007) ("When an appellant files a [Rule] 1925(b) statement, any issues not raised in that statement are waived on appeal."). Even if this argument was not waived, we do not appreciate its relevance. Husband's petition for contempt and enforcement was premised on alimony payments made under the Stipulation Order and the PSA. Thus, it is immaterial whether Mr. Falcone may have cohabited with Wife prior to the execution of the Stipulation Order and the PSA in February 2012.

1925(a) opinion, authored by the Honorable Patricia E. Coonahan, cogently disposes of Husband's issues on appeal. **See** Trial Court Opinion, 2/26/15, at 7-22. We, therefore, affirm the trial court's November 20, 2015 order. We direct that a copy of the trial court's February 26, 2015 Rule 1925(a) opinion be attached to any future filings in this case.

    Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2016

2010-04664-0129   2/26/2015 9:50 AM   # 10191031
Opinion
Rcpt#72341418 Fee:$0.00
Mark Levy - MontCo Prothonotary

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
## CIVIL ACTION – LAW

| | | |
|---|---|---|
| **JENNIFER DELLA GUARDIA,**<br>**PLAINTIFF/APPELLEE** | : | **SUPERIOR COURT DOCKET NO.**<br>**136 EDA 2015** |
| **v.** | : | |
| **JAMES DELLA GUARDIA**<br>**DEFENDANT/APPELLANT** | : | **LOWER COURT DOCKET NO.**<br>**2010-04664** |

## OPINION

**COONAHAN, J.**                                **FEBRUARY 26, 2015**

On February 21, 2012, Plaintiff/Appellee Jennifer Della Guardia (hereinafter "Plaintiff") and Defendant/Appellant James Della Guardia (hereinafter "Defendant") entered into a Stipulation for Agreed Order in Support.[1] Paragraph 5A of the stipulation and order, captioned "For Alimony Pendente Lite Purposes" states:

> "The Parties have entered into a comprehensive Property Settlement Agreement which includes a provision of alimony/alimony pendent [sic] lite for Wife as follows:
>
> Husband is currently obligated to pay Wife alimony pendente lite at the rate of $4,452.00 per month. Husband shall continue to be so obligated through February 29, 2012. Commencing March 1, 2012 and for a period of 18 months thereafter, Husband shall pay to Wife as alimony/alimony pendente lite, the sum of $2,550.00 per month. This payment shall be non-modifiable in amount and duration. However, this obligation shall terminate upon earliest of the following: 1) Wife's cohabitation, 2) Wife's remarriage, 3) Wife's death, 4) Husband's death, or 5) August 31, 2013, provided all payments contemplated herein have been paid. In addition

---

[1] On February 28, 2012, the stipulation for agreed order in support was signed by became an order of the court.

to the terms and conditions set forth in this paragraph, the parties shall also execute, contemporaneously with their execution of this Agreement, the Stipulation for Agreed Order in Support attached hereto as Exhibit 'A', which Stipulation is hereby incorporated into this Agreement."

On February 22, 2012, Plaintiff and Defendant entered into a property settlement agreement.[2] Section 19 of the property settlement agreement incorporates and restates Paragraph 5A of the February 21, 2012 stipulation for agreed order in support in regard to alimony as outlined above. Section 24, paragraph 4, of the property settlement agreement states in regard to attorney's fees as follows:

"Each party further hereby agrees to pay and to save and hold harmless the other party from any and all reasonable attorney's fees, and costs of litigation that either may sustain, or incur, or become liable for, in any way whatsoever, or shall pay upon, or in consequence of any default or breach by the other of any of the terms or provisions of this Agreement by reason of which either party shall be obliged to retain or engage counsel to initiate or maintain or defend proceedings against the other at law or equity or both or in any way whatsoever; provided that the party who seeks to recover such reasonable attorney's fees, and costs of litigation must first be successful in whole or in part, before there would be any liability for said reasonable attorney's fees, and costs of litigation. It is the specific agreement and intent of the parties that a breaching or wrongdoing party shall bear the burden and obligation of any and all costs and expenses and counsel fees incurred by himself or herself as well as the other party in endeavoring to protect and enforce his or her rights under this Agreement. The Court shall determine the reasonableness of the attorney fee award."

[2] The February 2, 2012 property settlement agreement was incorporated into the parties' March 5, 2012 divorce decree.

2

On February 28, 2013, Defendant filed a Petition for Contempt and to Enforce Stipulation for Agreed Order in Support wherein Defendant alleged that Plaintiff was in contempt of paragraph "5A" of the February 21, 2012 stipulation and order by cohabitating "with a male in which she is romantically involved with since on or about October 25, 2010." February 28, 2013 petition, section 6. On March 8, 2013, Plaintiff filed an Answer to Petition for Contempt and to Enforce Stipulation for Agreed Order in Support. On January 22, 2014, Plaintiff filed an Amended Answer to Petition for Contempt and to Enforce Stipulation for Agreed Order in Support with Counterclaim for Counsel Fees. In her counterclaim, Plaintiff requested the court reimburse her for legal fees incurred in her defense of Defendant's February 28, 2013 petition pursuant to section 24 of the parties' February 22, 2012 property settlement agreement.

Hearings were held on Defendant's February 28, 2013 petition and Plaintiff's January 22, 2014 amended answer and counterclaim on January 24, 2014, March 25, 2014, May 29, 2014, and September 26, 2014. At the hearings, Plaintiff was represented by Cheryl Sattin, Esquire, and Defendant was represented by Jason G. Donoghue, Esquire. At the January 24, 2014 hearing, Plaintiff testified as on cross examination that she lived at her residence with only her two daughters until September, 2013, when her boyfriend, Dan Falcone, moved in. N.T. January 24, 2014 at 12. Prior to September, 2013, Mr. Falcone "occasionally" stayed at her residence overnight. N.T. January 24, 2014 at 13. Plaintiff testified that prior to September, 2013, Mr. Falcone would stay overnight anywhere from "zero to five" nights in a two week period. N.T. January 24, 2014 at 13. Plaintiff

3

testified that Mr. Falcone would keep his personal items such as clothes in an overnight bag only, and did not keep other personal belongings in her residence. N.T. January 24, 2014 at 26. Plaintiff stated that Mr. Falcone never stayed overnight at her residence prior to September, 2013 when her two daughters were there. N.T. January 24, 2014 at 40.

The parties' daughter, Jessica Della Guardia, testified at the January 24, 2014 hearing that on one occasion she took a picture of Mr. Falcone's laundry at her mother's residence and that Mr. Falcone would "...bring clothes and have them washed there." N.T. January 24, 2014 at 107. Jessica testified that between March, 2012 and September, 2013, Mr. Falcone never stayed overnight at her mother's residence when she and her sister were living there. N.T. January 24, 2014 at 118, 144. When asked by Defendant's counsel if she had any direct information or knowledge that Mr. Falcone moved into Plaintiff's residence before November, 2013, Jessica testified that she did not. N.T. January 24, 2014 at 124.

At the March 25, 2014 hearing, Defendant testified as to what he believed the nature of Plaintiff's relationship was with Mr. Falcone prior to their moving in together in September, 2013. However, Defendant's testified to matters as far back as January, 2010, which is almost two years prior to the parties signing the February 22, 2012 property settlement agreement. Therefore, the majority of Defendant's testimony was irrelevant for purposes of the issue before the court which was whether or not Plaintiff had cohabitated with Mr. Falcone between February, 2012 and September, 2013. Defendant testified that he had seen Mr. Falcone's car parked outside Plaintiff's residence several times prior to September, 2013. N.T. March 25, 2014 at 52. Defendant testified that in his

4

"opinion", and that it was his "belief", that Plaintiff and Mr. Falcone were living together prior to signing the property settlement agreement in February, 2012, yet despite this, he signed the agreement which includes the provision that alimony would terminate upon Plaintiff's "cohabitation" with a man. N.T. March 25, 2014 at 104-105, 107. Defendant testified that he has never been inside Plaintiff's residence. N.T. March 25, 2014 at 123.

At the September 26, 2014 hearing, Plaintiff testified on direct examination that prior to September, 2013, Mr. Falcone never paid rent at her residence, he never paid any of the bills, he never received mail there, he never did any household chores or helped to maintain the home, he never mowed the lawn, or cleaned the house. N.T. September 26, 2014 at 10-11. Prior to September, 2013, Mr. Falcone never ate breakfast or lunch at Plaintiff's residence, but, occasionally, ate dinner there. N.T. September 26, 2014 at 15. Plaintiff testified that she and Mr. Falcone did not support each other financially prior to September, 2013, and she did not hold Mr. Falcone out as her husband in the community. N.T. September 26, 2014 at 19.

Mr. Falcone testified at the September 26, 2014 hearing that he began living with Plaintiff in September, 2013. N.T. September 26, 2014 at 80. Mr. Falcone testified that he paid rent at a separate address through August, 2013. He testified that prior to September, 2013, he never stayed overnight at Plaintiff's residence when her daughters were present. N.T. September 26, 2014 at 85. Mr. Falcone also testified that prior to September, 2013, he never paid rent or any bills at Plaintiff's residence, he did not do any chores at the house or perform any maintenance on the property, and he did not keep personal items or clothing there. N.T. September

5

26, 2014 at 86. Mr. Falcone testified that prior to September, 2013, he never used Plaintiff's home phone number as a number where people could reach him, and he never bought food for Plaintiff's house. N.T. September 26, 2014 at 87. He stated that prior to September, 2013, he never held Plaintiff out as a person who was either his wife or someone he was living with. N.T. September 26, 2014 at 88.

After the hearings, on November 20, 2014, the court issued the following order[3]:

> "AND NOW, this 20[th] day of November, 2014, upon consideration of Defendant's February 28, 2013 Petition for Contempt and to Enforce Stipulation for Agreed Order in Support, Plaintiff's January 22, 2014 Amended Answer to Petition for Contempt and to Enforce Stipulation for Agreed Order in Support with Counterclaim for Counsel Fees, following hearings on January 24, 2014, March 25, 2014, May 29, 2014, and September 26, 2014 and upon consideration of Plaintiff's November 5, 2014 Brief Submitted in Opposition to Defendant's Petition for Contempt and in Support of Plaintiff's Counterclaim for Counsel Fees, and Defendant's November 7, 2014 Memorandum of Law of Closing Arguments as so Ordered by the Court for Defendant's Petition for Contempt and Enforcement of the February 22, 2012 Property Settlement Agreement, it is hereby ORDERED and DECREED as follows:
>
> Defendant's February 28, 2013 Petition is DENIED.
>
> Plaintiff's January 22, 2014 Counterclaim is GRANTED as follows:
>
> Pursuant to section 24 of the parties' February 22, 2012 Property Settlement Agreement, Defendant shall reimburse Plaintiff for the reasonable attorney's fees charged to Plaintiff by Plaintiff's counsel for the cost of litigation in this matter in the amount of $6,415.00 within sixty (60) days of the date of this Order."

---

[3] The November 20, 2014 order was filed with the Montgomery County Prothonotary on November 21, 2014.

6

On December 22, 2014 Defendant filed a Notice of Appeal to the Superior Court of Pennsylvania of the November 20, 2014 Order issued by this court. On December 23, 2014, the trial court issued an Order directing Defendant to file with the court a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925 (b) within twenty one (21) days of the date of the Order. On January 12, 2015, Defendant filed his Concise Statement of Matters Complained of on Appeal and stated the trial court erred as follows:

"1. By not applying The Supreme Court of Pennsylvania's case law ruling of Kripp v. Kripp, 849 A.2d 1159 – Pa: Supreme Court 2004, as it pertains to their finding in the following:

a. The application of the definition and elements of the term "cohabitation", and;
b. The admissibility of Parole Evidence for the evaluation of an entitlement for Husband's obligation to pay Spousal Support, Alimony Pendente Lite, and Alimony.

2. By not applying the Superior Court of Pennsylvania's case law ruling of Moran v. Moran, 839 A.2d 1091 – Pa: Superior Court 2003, as it pertains to their finding of the following:

a. The application of the definition and elements of the term "cohabitation", and;
b. The Courts rulings on financial interdependence between Wife and boyfriend, and;
c. The test of overnight stays being more than "just visiting" and;
d. The inclusion of participating in joint business trips, weekend outings and vacations.

3. By not applying The Supreme Court of Pennsylvania's case law ruling of Miller v. Miller, 508 A.2d 550 – Pa: Supreme Court 1986, as it pertains to their finding in the following:
a. The application of the definition and elements of the tem "cohabitation", and;
b. Burden of proof being a preponderance of the evidence.

7

4. By not applying the Superior Court of Pennsylvania's case law ruling in Lobaugh v. Lobaugh, 753 A.2d 834- PA: Superior Court 2000, as it pertains to the following:

   a. The definition and elements of the term "cohabitation", and;

   b. Testimony by the parties child as to the living arrangements between Wife and Boyfriend, and;

   c. Interpretation of the property settlement agreement terms and parameters of termination in the agreement for payment obligation of Husband.

5. By not applying the Superior Court of Pennsylvania's case law ruling in Faherty v. Gracias, 874 A.2d 1239 – Pa: Superior Court 2005, as it pertains to the following:

   a. The application of the definition and elements of the term "cohabitation", and;

   b. The application of Section 507 of the Divorce Code.

6. By not allowing Michele Harris of Harris Investigations, LLC to testify and put forth evidence as an "expert witness" under the rules of evidence as it to pertains to surveillance in matters related to this case and the activities of Wife and her boyfriend.

7. By not allowing Michele Harris of Harris Investigations, LLC. to testify and put forth evidence as to the business records exception under the rules of evidence for testimony and records.

8. By allowing Plaintiff to move forward with testimony or the introduction of evidence after denying her Pa.R.C.P. 226(b) motion.

9. By entering an Order awarding Plaintiff attorney fees for Defendant's Petition for Contempt and to Enforce Stipulation for Agreed Order in Support.

10. By entering an Order Denying Defendant's Petition for Contempt and to Enforce Stipulation for Agreed Order in Support."

This opinion is filed pursuant to and is in compliance with Pa. R.A.P. 1925 (a).

When reviewing an appeal from a contempt order, the appellate court "must place great reliance upon the sound discretion of the trial judge." Godfrey v. Godfrey, 894 A.2d 776, 2006 PA Super 39 (2006); Langendorfer v. Spearman, 797 A.2d 303, 2002 PA Super 93 (2002). The scope of review for the appellate court is very narrow, and the appellate court is limited to "determining whether the trial court committed an abuse of discretion." Godfrey, 2006 PA Super (2006). The trial court abuses its discretion in a contempt case if it "misapplies the law or exercises its discretion in a manner lacking reason." Godfrey, 2006 PA Super 39 (2006); Hopkins v. Byes, 954 A.2d 654, 2008 PA Super 172 (2008). A party alleging contempt of a court order has the burden to show a party violated an order by a preponderance of the evidence. Hopkins, 2008 PA Super 172 (2008).

In reaching a property settlement agreement or spousal support agreement, the parties in a divorce have the right and power to define for themselves the conditions under which alimony or alimony pendente lite payments are to terminate, and the court has no authority after the divorce decree to alter that agreement. Woodings v. Woodings, 411 Pa. Super. 406, 601 A.2d 854 (1992). Cohabitation by the receiving spouse with a member of the opposite sex "who is not a member of the petitioner's family within the degrees of consanguinity" may provide the grounds for termination of alimony or alimony pendente lite by agreement of the parties. Schenk v. Schenk, 2005 PA Super 266, 880 A.2d 633 (2005); Kripp v. Kripp, 578 Pa. 82, 849 A.2d 1159 (2004); Lobaugh v. Lobaugh, 753 A.2d 834 (2000). Cohabitation has been defined as occurring when "two persons of the opposite sex reside together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage

9

relationship." Miller v. Miller, 352 Pa. Super. 432, 508 A.2d 550 (1986).

Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means." Moran v. Moran, 839 A2d 1091, 2003 PA Super 455 (2004). Cohabitation is a definition that has to be viewed in light of the facts of each individual case..." demonstrating "...a consistent pattern of conduct established over a substantial period of time..." Thomas v. Thomas, 335 Pa. Super. 41, 483 A.2d 945 (1984).

The court addresses the Plaintiff's claims as follows;

> "1. By not applying The Supreme Court of Pennsylvania's case law ruling of Kripp v. Kripp, 849 A.2d 1159 – Pa: Supreme Court 2004, as it pertains to their finding in the following:
>
> c. The application of the definition and elements of the term "cohabitation", and;
> d. The admissibility of Parole Evidence for the evaluation of an entitlement for Husband's obligation to pay Spousal Support, Alimony pendente Lite, and Alimony.

Kripp v. Kripp, 578 Pa. 82, 849 A.2d 1159 (2004) defines cohabitation by referring to its definition as stated in Lobaugh v. Lobaugh, 753 A.2d 834, 836 (Pa.Super.Ct. 2000) and Miller v. Miller, 352 Pa.Super. 432, 508 A.2d 550, 554 (1986).These cases define cohabitation as occurring when "two persons of the opposite sex reside together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage relationship." Kripp, 849 A.2d 1159, citing Lobaugh, 753 A2d at 836 and Miller, 508 A.2d at 554.

Based on the testimony presented at the hearings in this matter, the court found that Plaintiff and Mr. Falcone were not cohabitating prior to September, 2013 as defined in the above cases. Plaintiff and Mr. Falcone both testified that prior to

10

September, 2013, Mr. Falcone "occasionally" stayed overnight at her residence, anywhere from "zero to five" nights in a two week period, and that he never stayed overnight during the weeks when she had physical custody of her two daughters. Plaintiff and Mr. Falcone testified that Mr. Falcone kept his belongings in an overnight bag which he would take to and from Plaintiff's residence, and prior to September, 2013, Mr. Falcone and Plaintiff did not share financial obligations, nor did Mr. Falcone receive mail at Plaintiff's house, nor use her phone number as his own. Plaintiff and Mr. Falcone both testified that prior to September, 2013, Mr. Falcone did not perform any household chores at Plaintiff's residence, nor did he eat breakfast or lunch there. Plaintiff and Mr. Falcone also both testified that they did not hold one another out to the community as husband and wife.

None of this evidence was persuasively rebutted by Defendant at the hearings. Defendant offered his "belief' and "opinion" that Plaintiff and Mr. Falcone were cohabitating prior to September, 2013, mainly because he witnessed Mr. Falcone's car parked outside Mother's residence on numerous occasions. However, Defendant testified that he had actually never been inside Mother's residence. Defendant's witness, the parties' daughter, Jessica Della Guardia, testified that she had no direct information or knowledge that Mr. Falcone moved into her mother's residence before November, 2013. N.T. January 24, 2014 at 124. Although Defendant offered Jessica's testimony to prove cohabitation because she photographed Mr. Falcone's laundry in Plaintiff's laundry area, Jessica actually testified that Mr. Falcone would "bring clothes and have them washed there". Based on the testimony as a whole, the court could not conclude that Mr. Falcone washed his clothes at the Plaintiff's home because he lived there, but, rather

11

brought his clothes to Plaintiff's residence from his own, separate residence to use Plaintiff's laundry facilities.

Applying the definition of cohabitation as stated in Kripp, Miller and Lobaugh, Defendant did not prove by a preponderance of the evidence and under case law that prior to September, 2013, Plaintiff and Mr. Falcone lived together "in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage relationship." The court applied the definition of cohabitation as stated in Kripp, therefore, the court did not err in its conclusion, and, Defendant's claim is without merit and should be dismissed.

Kripp also holds that "when an ambiguity exists in the terms of a contract, parol evidence is admissible to explain or clarify or resolve the ambiguity." In Kripp, the court found that a property settlement agreement stating that alimony payments to wife would end after a minimum period if wife were to "cohabitate" was ambiguous as to whether it referred to or included the wife living with a person of the same sex, since the facts in that case involved allegations that the dissolution of the parties' marriage was husband's discovery that wife was involved "in an intimate relationship with a woman". Therefore, parol evidence was admissible in that case to determine the meaning of the term "cohabitate" since wife was living with a woman.

In this case, there was no ambiguity alleged or shown in the terms of the parties' February 22, 2012 property settlement agreement, or the parties' February 21, 2012 support stipulation. Defendant's only issue as raised in his February 28, 2013 Petition for Contempt was whether or not Plaintiff had cohabitated with Mr. Falcone prior to September 1, 2013, which would in turn

12

relieve Defendant of his alimony obligation to Plaintiff. No claim was raised by Defendant as to any ambiguity in the parties' property settlement agreement. Therefore, the parol evidence holding in Kripp is not relevant to the instant matter, and, Defendant's claim the court erred by not "applying" that holding in this matter is without merit.

> 2. By not applying the Superior Court of Pennsylvania's case law ruling of Moran v. Moran, 839 A.2d 1091 – Pa: Superior Court 2003, as it pertains to their finding of the following:
>
> e. The application of the definition and elements of the term "cohabitation", and;
> f. The Courts rulings on financial interdependence between Wife and boyfriend, and;
> g. The test of overnight stays being more than "just visiting" and;
> h. The inclusion of participating in joint business trips, weekend outings and vacations.

The definition and "elements" of cohabitation as stated in Moran v. Moran, 839 A.2d 1091, 2003 PA Super 455 (2004) are the same as those stated in Miller v. Miller, 508 A.2d 550, which the court has previously addressed in discussion of paragraph 1 of Defendant's concise statement.

The facts of Moran differ significantly from those of the instant case in that the court in Moran was determining the issue of wife's eligibility to receive alimony in the first place. This case involves the determination of whether or not Plaintiff cohabitated with Mr. Falcone so as to nullify her eligibility for alimony payments that were agreed to by the parties. Furthermore, the evidence in Moran showed that wife was not residing at her residence at all, but was spending the "majority" of her time over a two year span with her significant other, which was shown through utility usage and

13

banking transactions. Therefore, the court concluded that overnight stays were more than "just visiting" which was the terminology used by wife in her testimony. There was also evidence that the wife in Moran accompanied her significant other "almost everywhere" including business trips, weekend outings, and vacations. None of these facts were present in the instant case. Defendant in this case focuses on the finding in Moran that there was cohabitation despite the absence of "co-mingling of funds, such as joint accounts". However, the court in Moran found cohabitation had occurred in conjunction with several other factors which were not proven in the instant case, as previously stated. Defendant's reliance on Moran as being applicable to the instant case is misplaced, and, therefore Defendant's claims raised in paragraph 2 of his concise statement are without merit and should be dismissed.

> 3. By not applying The Supreme Court of Pennsylvania's case law ruling of Miller v. Miller, 508 A.2d 550 – Pa: Supreme Court 1986, as it pertains to their finding in the following:
> a. The application of the definition and elements of the term "cohabitation", and;
> b. Burden of proof being a preponderance of the evidence.

Defendant's claims raised in paragraph 3 of his concise statement are repetitive of his claims raised in paragraph 1, therefore, the court restates and incorporates its position as set forth in its discussion under paragraph 1 above wherein the court also addresses the holding in Miller v. Miller, 352 Pa.Super. 432, 508 A.2d 550, 554 (1986). Again, there is no merit to this issue.

14

4. By not applying the Superior Court of Pennsylvania's case law ruling in Lobaugh v. Lobaugh, 753 A.2d 834- PA: Superior Court 2000, as it pertains to the following:
  a. The definition and elements of the term "cohabitation", and;
  b. Testimony by the parties child as to the living arrangements between Wife and Boyfriend, and;
  c. Interpretation of the property settlement agreement terms and parameters of termination in the agreement for payment obligation of Husband.

Defendant's claims raised in paragraph 4 of his concise statement are repetitive of his claims raised in paragraph 1, therefore, the court restates and incorporates its position as set forth under paragraph 1 above wherein the court addresses the holding in Lobaugh v. Lobaugh, 753 A.2d 834, 836 (Pa.Super.Ct. 2000). Furthermore, the issue of "interpretation of the property settlement agreement terms and parameters" was not before the court at the hearings in this matter as stated previously in this opinion. In reaching a property settlement agreement or spousal support agreement, the parties in a divorce have the right and power to define for themselves the conditions under which alimony or alimony pendente lite payments are to terminate, and, the court has no authority after the divorce decree to alter that agreement. Woodings, 411 Pa. Super. 406. There is no merit to this argument.

5. By not applying the Superior Court of Pennsylvania's case law ruling in Faherty v. Gracias, 874 A.2d 1239 – Pa: Superior Court 2005, as it pertains to the following:
  a. The application of the definition and elements of the term "cohabitation", and;
  b. The application of Section 507 of the Divorce Code.

15

Faherty v. Gracias, 874 A.2d 1239, 2005 PA Super 174 (2005) is a wrongful death malpractice case, and, does not raise any issue with regard to the "definition and elements of the term 'cohabitation'" and does not refer to Section 507 of the Divorce Code. Therefore, Defendant's claims raised in paragraph 5 of his concise statement are without merit and should be dismissed.

> 6. By not allowing Michele Harris of Harris Investigations, LLC to testify and put forth evidence as an "expert witness" under the rules of evidence as it to pertains to surveillance in matters related to this case and the activities of Wife and her boyfriend.

Pennsylvania Rule of Evidence 702 states:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the experts' scientific, technical or other specialized knowledge is beyond that possessed by the average layperson;
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> (c) the expert's methodology is generally accepted in the relevant field"

At the January 24, 2014 hearing, Defendant called Michele Harris, a licensed private investigator, as a witness. Defense counsel attempted to qualify Ms. Harris as an expert, seemingly, so Ms. Harris could testify about the contents of certain photographs and documents of which she herself had no firsthand knowledge. In fact, Ms. Harris testified that she personally never observed Mr. Falcone's car outside of Plaintiff's residence.

16

Ms. Harris' credentials as testified to at the January 24, 2014 hearing did not qualify her as an expert in the area of "surveillance". Ms. Harris obtained her private investigator's license by getting on the job training for a period of more than five years from another investigator, and there were no other qualifications for her license other than a certification that she had received on the job training. N.T. January 24, 2014 at 64. Ms. Harris also testified that none of her specific licenses from Pennsylvania, New Jersey, Delaware and Maryland require any specific education. N.T. January 24, 2014 at 68. When inquiring about seminars which the witness had attended, Plaintiff's counsel asked Ms. Harris: "Is there any specific scientific or expert training that goes on at these seminars?", Ms. Harris replied: "They train you how to do certain things, but it's not necessarily scientific or technical or anything like that." N.T. January 24, 2014 at 69. The court determined that based on Ms. Harris' testimony, she could arguably be an expert in "cell phone forensics", and that her testimony in this area would be beyond the knowledge of a layperson, "but I don't find her to be an expert in anything else." N.T. January 24, 2014 at 74. Nothing in Ms. Harris' background as testified to at the January 24, 2014 hearing would permit her to testify as an expert as permitted by Pa.R.E. 702 in the field of "surveillance." The court concluded that Defendant's attempt to have Ms. Harris testify as an expert was simply an effort to place into evidence the contents of photographs and documents of which she herself admittedly had no personal knowledge. Photographs and notes taken by her employees during their surveillance of Plaintiff's home, which Ms. Harris was not present for, did not qualify her as

17

an expert in surveillance. Defendant's claim raised in paragraph 6 of his concise statement is without merit and should be dismissed.

> 7. By not allowing Michele Harris of Harris
> Investigations, LLC. to testify and put forth evidence
> as to the business records exception under the rules of
> evidence for testimony and records.

The court assumes that Defendant is referring in paragraph 7 of his concise statement to Pa.R.E. 803(6) Exceptions to the Rule against Hearsay, entitled "Records of a Regularly Conducted Activity." Defendant does not indicate what specific "evidence" Ms. Harris was prevented from presenting at the hearing that would have been permissible hearsay under this rule. The only exhibit marked by Defendant's counsel in regard to Ms. Harris' testimony was Ms. Harris' "personal memorandum of the investigation", which Defense counsel produced and marked after Ms. Harris' testimony had concluded, and which was never properly introduced during Ms. Harris' testimony. Plaintiff's counsel objected to its admission and it was excluded by the court since it was not marked nor introduced during Ms. Harris' testimony. There is no merit to this issue.

> 8. By allowing Plaintiff to move forward with
> testimony or the introduction of evidence after denying
> her Pa.R.C.P. 226(b) motion.

Pa.R.C.P. 226(b) states: "At the close of all evidence, the trial judge may direct a verdict upon the oral or written motion of any party." At the March 25, 2014 hearing, Plaintiff made an oral motion for a directed verdict at the conclusion of Defendant's case. The court and counsel discussed on the record that if the court were to deny Plaintiff's directed verdict motion, an

18

additional hearing would be scheduled to present Plaintiff's case in chief. N.T. March 25, 2014 at 148-156. On May 12, 2014, the court issued an order denying Plaintiff's motion for directed verdict and scheduled "an additional hearing date for the conclusion of evidence in the above captioned matter." Defendant's claim that Pa.R.C.P. 226(b) precluded Plaintiff from proceeding with her case, because Plaintiff's counsel raised the motion prior to the close of all evidence is without merit.

The court views Pa.R.C.P. 226(b) in light of Pa.R.C.P. 126, entitled "Liberal Construction and Application of Rules" which states:

> "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

Defendant's argument at the time of the hearings was that because Plaintiff's counsel used the terminology "motion for directed verdict" instead of "motion to dismiss", Plaintiff was precluded from proceeding with her case after her motion was denied since Pa.R.C.P. 226(b) states that such a motion for directed verdict shall occur "at the close of all the evidence" in a case. However, the argument raised by Plaintiff in her oral motion for a directed verdict, and the relief being requested, were identical to those which would have been raised in a motion to dismiss. Defendant was not prejudiced by the terminology used by Plaintiff's counsel. Therefore, pursuant to Pa.R.C.P. 126, the court permitted Plaintiff to proceed with her case in chief.

19

"A rule which mandates summary dismissal of a law suit based upon a nonprejudicial procedural error is inconsistent with the fairness required by the Pennsylvania Rules of Civil Procedure." DeAngelis v. Newman, 501 Pa. 144, 460 A.2d 730 (1983).

Defendant's claim raised in paragraph 8 of his concise statement is without merit, and should, therefore, be dismissed.

> 9. By entering an Order awarding Plaintiff attorney
> fees for Defendant's Petition for Contempt and to
> Enforce Stipulation for Agreed Order in Support.

Defendant's claim raised in paragraph 9 of his concise statement does not specifically allege how the court erred by entering an order awarding Plaintiff attorney's fees in this matter. It is the appellant's responsibility to precisely identify any purported errors. Schenk v. Schenk, 880 A.2d 633 (Pa. Super. 2005). "When the trial court has to guess what issues a defendant is appealing, that is not enough for meaningful review." Commonwealth v. Dowling, 2001 PA Super 166, 778 A.2d 683 (2001). A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. In re A.B., 2013 PA Super 43, 63 A.3d 345 (2013).

Nevertheless, on the merits, section 24, paragraph 4, of the parties' February 22, 2012 property settlement agreement states that each party shall be responsible for the reasonable attorney's fee of the other party

> "in consequence of any default or breach by the other
> of any of the terms or provisions of this Agreement by
> reason of which either party shall be obliged to retain
> or engage counsel to initiate or maintain or defend
> proceedings against the other at law or equity or both or
> in any way whatsoever; provided that the party who seeks
> to recover such reasonable attorney's fees, and costs of

20

litigation must first be successful in whole or in part, before there would be any liability for said reasonable attorney's fees, and costs of litigation."

Defendant's claim raised in paragraph 9 of his concise statement is either waived, or without merit, and should be dismissed.

> 10. By entering an Order Denying Defendant's Petition for Contempt and to Enforce Stipulation for Agreed Order in Support."

Defendant's claim raised in paragraph 10 of his concise statement does not specifically allege how the court erred by entering an order denying Defendant's petition for contempt and to enforce stipulation for agreed order in support. It is the appellant's responsibility to precisely identify any purported errors. Schenk, 880 A.2d 633. "When the trial court has to guess what issues a defendant is appealing, that is not enough for meaningful review." Commonwealth v. Dowling, 2001 PA Super 166. A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. In re A.B., 2013 PA Super 43. Therefore, Defendant's claim raised in paragraph 10 of his concise statement is waived, and should be dismissed. Nevertheless, the foregoing discussions in this opinion of the Defendant's issues negates error by the court.

The court did not err or abuse its discretion in not finding Plaintiff in contempt of the February 22, 2012 property settlement agreement. Defendant did not prove by a preponderance of the evidence that Plaintiff had cohabitated with Mr. Falcone prior to September, 2013, and even had the court made such a finding, this did not lead the court to conclude that

21

Plaintiff was in contempt of the agreement, rather, it would lead the court to conclude that the alimony payments should end. The February 22, 2012 property settlement agreement did not contain a duty of the Plaintiff to notify Defendant if she were cohabitating with Mr. Falcone to warrant a finding of contempt. The property settlement agreement states that alimony shall terminate "...upon earliest of the following: 1) Wife's cohabitation, 2) Wife's remarriage, 3) Wife's death, 4) Husband's death, or 5) August 31, 2013..." The court could not find that there was cohabitation proven under the facts of this case to warrant negating Defendant's promise to pay to Plaintiff alimony/alimony pendente lite per their agreement.

For the above stated reasons, the court respectfully requests that Defendant's appeal be dismissed and the November 20, 2014 order be affirmed.

**BY THE COURT:**

**PATRICIA E. COONAHAN, J.**

Copies of the above Opinion mailed
on 2/26/15 to the following:
**By First-Class Mail:**

Frederick W. McBrien III, Esquire
Jason Donoghue, Esquire
Cheryl Sattin, Esquire

Secretary

22